PARSONS and others *v.* CHARTER OAK LIFE INS. Co. and others.

*(Circuit Court, S. D. Iowa, C. D.* June 11, 1887.)

CORPORATIONS—RECEIVERS—INSOLVENCY—JURISDICTION.

A life insurance company. organized under the laws of Connecticut, owned real estate and had policy-holders in Iowa, and, having become insolvent, a receiver was appointed by the Connecticut court. Afterwards, in a suit by Iowa creditors, the Iowa court appointed a receiver of the property located there, it being claimed that Iowa creditors had a superior right to such property, and that a foreign receiver did not control assets outside the state where he was appointed. *Held* that, as the statutes of Connecticut provided for receivers, it was a part of the contract with policy-holders that, in case of insolvency, such receiver should marshal all the assets, so that his powers were not limited as those of a receiver usually are, and the Connecticut receiver controlled all the company's assets; following *Relfe* v. *Rundle*, 103 U. S. 222.

In Equity. Demurrers to original bill, and to intervening petitions.

*Gatch, Connor & Weaver* and *Kauffman & Guernsey,* for complainants and intervenors.

*Cummins & Wright,* for defendants.

SHIRAS, J. This cause was originally commenced in the circuit court of Polk county, Iowa, and, upon application of defendants, was removed to this court. In the bill filed by complainants it is averred that the Charter Oak Life Insurance Company is a corporation organized under the laws of the state of Connecticut, for the purpose of carrying on the business of life insurance; that it has been thus engaged for many years, and has issued policies on the lives of many persons residing in Iowa, as well as on the lives of residents of many other states; that it has invested large parts of its assets in Iowa, now owning real estate and other property to the estimated amount of $100,000, situated in the state of Iowa; that a short time since the said corporation became insolvent, and in a proceeding brought for that purpose in the superior court of the city of Hartford, Connecticut, the company was adjudged to be insolvent, and in September, 1886, a receiver was appointed by that court, and authorized to take possession of the property and assets of said corporation, in order that the affairs of the company might be legally wound up, and the corporation be dissolved; that the complainants herein are citizens of Iowa, holding policies of insurance in said company, and therefore creditors of said company, and as such they have an equitable interest in the property of the company situated in said state of Iowa prior and superior to the rights of creditors residing in other states, and for the protection thereof. Complainants pray for the appointment of a receiver to take possession of the property of the company in Iowa, the same to be held and disposed of by the court for the protection of complainants and the other Iowa policy-holders.

The state court appointed a receiver, who gave bond in the sum fixed by the order of appointment, and thereupon the cause was, upon application of the defendants, removed to this court. Several policy-holders

have intervened for the protection of their interests, and the receivers appointed in Connecticut have likewise intervened, and ask that the order appointing the receiver in Iowa be set aside, that their right to the possession and control of the assets of the company in Iowa be recognized, and that, if deemed necessary, an ancillary appointment of a receiver for the common benefit of all creditors be made by this court.

Demurrers to the original bill and intervening petition of the policy-holders and to the petition of the receivers have been filed, presenting the question of the rights of the Iowa creditors to the assets in Iowa, and of the right of the receivers appointed in Connecticut to be heard in this court, and of their right to the possession or control of the assets of the company in Iowa. In the bill filed by complainants, and in the argument in support thereof, it is claimed that the creditors residing in Iowa have, by reason of such residence, a superior equity over non-resident creditors in and to the assets of the company found in Iowa, and, in support of the demurrer filed by complainants to the intervening petition filed by the receivers appointed in Connecticut, it is said that they are foreign receivers, and, as such, have no standing in the courts of Iowa, no authority to sue therein, and no right in or control over the property of the insurance company situated in any other state than Connecticut; and that the courts of Iowa will not compel citizens of Iowa to seek protection in the courts of other states, by permitting or aiding foreign receivers to take possession of the assets of the company found in Iowa, and remove the same into another jurisdiction.

The chief authority relied on by counsel for complainants is the case of *Booth* v. *Clark*, 17 How. 322, in which, after a very full consideration of the authorities, the supreme court held that a receiver appointed under a creditors' bill, for the benefit of one or more creditors, to the exclusion of all others, has no power or rights beyond the territorial jurisdiction of the court appointing him, and that such court could not confer upon him authority to go into a foreign jurisdiction to take possession of the debtor's property, or to maintain suit therefor outside the jurisdiction appointing him. The facts out of which the contest arose in that cause were somewhat peculiar; but it is not necessary to state the details thereof further than to quote the statement by the supreme court that "this suit, then, is substantially between Hackett, as the assignee of Clark in bankruptcy, and Booth, the receiver under Camara's creditors' bill; that it may be determined by this court which of them has the official right to the Mexican fund, for the distribution of it between the creditors of Clark, or whether Booth, as receiver, shall have from that fund a sufficient sum to pay Camara's entire debt, leaving the residue of it for distribution between Clark's other creditors."

Booth had been appointed receiver upon a creditors' bill filed in New York. His title depended solely upon the order of the court appointing him, as the debtor Clark had not, either voluntarily or by compulsion, executed any conveyance of his property to such receiver. Hackett was an assignee in bankruptcy, appointed under proceedings in bankruptcy filed by Clark in the United States court in New Hampshire, under the

provisions of the bankrupt law of the United States passed August 19, 1841. The supreme court held that, as against the assignee in bankruptcy, the receiver had no title or right to the property. In discussing the case, the court gives the rule as to the power and rights of ordinary receivers in terms broad enough to fully sustain the contention of complainants herein, and, if the facts of the present case were the same as in *Booth* v. *Clark*, there would be no doubt of the rule to be followed. The conclusion reached in that case was that the assignee in bankruptcy, representing the rights of the general creditors, had the superior right to the assets over the receiver representing one creditor only. In the present case the receivers appointed in Connecticut represent the general creditors, and the complainants their own claims only. If the latter are held to have the superior equity and right, then the few will be preferred over the many.

Again, it will be remembered that in *Booth* v. *Clark* there was involved simply the question of the rights of creditors in and to the property of a single person. The case did not present the question of the rights and equities of creditors of a corporation. If the broad claim made on behalf of complainants, that creditors living in Iowa have the superior equity and right to the assets of the company found in Iowa, is well founded, the results, when applied to cases of insurance companies, will be most inequitable and unjust. A person living in Iowa, for instance, takes a policy upon his life, payable at his death, or under the endowment plan, payable in 15 or 20 years. When the policy is issued, a large part of the assets of the company is invested in Iowa property. In the progress of time the location of such investments is changed, the whole thereof being withdrawn from this state. The company becomes insolvent, and there are claims enough in the other states to absorb all the assets found in the several states. In such case, the Iowa creditors, under the rule advocated by complainants, would be wholly cut out from any participation in the proceeds of the assets of the insolvent company. Such a rule would also place it within the power of the managing officers of such companies, when they became aware of the probable insolvency of the corporation, to protect and prefer the policy-holders of one section or state at the expense of others holding equally meritorious claims, by concentrating the investments of the company in one or more states.

The doctrine enunciated in *Booth* v. *Clark*, and the cases based thereon, was not intended to work out any such inequitable result. In other words, that case does not deal with the questions presented in cases of corporations of the character of the Charter Oak Life Insurance Company, in which the equities of policy-holders and other creditors are derived from radically different sources than in case of a claim against an individual debtor. The doctrine of *Booth* v. *Clark* is that it is inequitable to permit one or a few creditors, by filing a creditors' bill, and having a receiver appointed by the court, to draw into that court for their benefit the assets of the debtor situated in other states or jurisdictions, thus depriving other creditors of the right to subject such assets to the payment of their claims; and, in order to defeat the effort of the few to

secure a preference over all others, it is held that a receiver appointed by a court at the suit of one or more creditors will not be heard to assert a right, as against other creditors, to assets situated beyond the territorial jurisdition of the court appointing him. It was not, however, intended in such case to establish the proposition that, because there were creditors residing in the state, *ipso facto* they had the right to exclude all non-resident creditors from participating in the proceeds of the assets in such state.

In *Relfe* v. *Rundle*, 103 U. S. 222, is found the rule which is applicable to the present case. In that cause it appeared that the Life Association of America was a corporation organized under the laws of the state of Missouri, one of the provisions of which is that, upon the rendition of judgment dissolving a company or declaring it insolvent, all the assets of such company shall vest in fee-simple in the superintendent of insurance, to be by him disposed of for the benefit of the creditors and policy-holders of such company. In October, 1879, proceedings were commenced in Missouri for the purpose of having the association declared insolvent, and winding up its affairs under the statute. In November, 1879, Rundle and wife, who were policy-holders in the company, commenced suit in a Louisiana court for the purpose of having the assets of the association in Louisiana declared a trust fund, and applied to the payment of the claims of the Louisiana creditors; and to that end, to keep such assets out of the hands of William S. Relfe, who was the superintendent of insurance of the state of Missouri. The case came before the supreme court upon the question of the right of removal to the federal court, it being urged in opposition thereto that Relfe had no standing in the courts of Louisiana. It was held that Relfe was not an officer of the Missouri state court, but the person designated by law to take the property of any dissolved life insurance company of that state, and hold and dispose of it in trust for creditors; and that the law which clothed him with this trust was, in legal effect, part of the charter of the company; that he was an officer of the state, and his authority came, not from the decree of the court, but from the statute, and that he was, in effect, the corporation itself, for all the purposes of winding up its affairs. The court then proceeds to say:

"We are aware that, except by virtue of some statutory authority, an administrator appointed in one state cannot generally sue in another, and that a receiver appointed by a state court has no extraterritorial power. But a corporation is the creature of legislation, and may be endowed with such powers as its creator sees fit to give. Necessarily it must act through agents, and the state which creates it may say who those agents shall be. One may be its representative when in active operation, and in full possession of all its powers, and another if it has forfeited its charter, and has no lawful existence except to wind up its affairs. No state need allow the corporations of other states to do business within its jurisdiction unless it chooses, with perhaps the exception of commercial corporations; but, if it does, without limitation, express or implied, the corporation comes in as it has been created. Every corporation necessarily carries its charter wherever it goes, for that is the law of its existence. It may be restricted in the use of some of its powers while doing business away from its corporate home, but every person who

deals with it, everywhere is bound to take notice of the provisions which have been made in its charter for the management and control of its affairs, both in life and dissolution. By the charter of this company, if a dissolution was decreed, its property passed by operation of law to the superintendent of the insurance department of the state, and he was charged with the duty of winding up its affairs. Every policy-holder and creditor in Louisiana is charged with notice of this charter right, which all interested in the affairs of the corporation can insist shall be regarded. The appellees, when they contracted with the Missouri corporation, implicitly agreed that, if the corporation was dissolved under the Missouri laws, the superintendent of the insurance department of the state should represent the company in all suits instituted by them affecting the winding up of its affairs."

The provision of the laws of Missouri in regard to the power and authority of the state superintendent of insurance is part of the general statutes of the state, but the supreme court, in the opinion just cited, treat it as being a part of the charter of every company organized in Missouri.

Turning, now, to the laws of the state of Connecticut, we find it enacted that, if the insurance commissioner of the state shall find an insurance company organized under the laws of that state to be insolvent, "he shall bring a petition to the superior court of the county in which the principal office of such company is located, if in session; and, if not, to a judge of the supreme court of errors, praying for the appointment of a receiver, and that the charter of the company may be annulled;" it being further provided that the court or judge may appoint a receiver, make all necessary orders in reference to the delivery to and possession by such receiver of the assets and property of such company, and the sale and conveyance of the same by him, and may direct the application of the avails of such assets and property equitably, in satisfaction of the claims proved against such company, and the payment of the present value of its outstanding policies, either in whole or in part, or to the reinsurance of its outstanding policies in some solvent company," etc.

This is the mode and manner provided for the dissolution and winding up of the affairs of the company in case of insolvency, and, as stated in *Relfe* v. *Rundle*, every policy-holder and creditor in Iowa is charged with notice thereof. In other words, when the complainants in Iowa took out policies of insurance in a Connecticut corporation, they took the same subject to the provisions of such charter; and they impliedly agreed that, in case of insolvency and dissolution under the laws of the state of Connecticut, they would be bound by the provisions of such laws, so far as the same form part of the charter of the company; and under the provisions of the charter and statutes of Connecticut, in case of insolvency, the court may decree the dissolution of the company, appoint a receiver, with power to take possession of and sell and convey all the assets of the company, and divide the proceeds equitably among all the creditors and policy-holders. So far as the rights of complainants are based upon the charter of the company, they have the right to insist, as against all other creditors, that the charter rights above named shall be carried into effect; and the other creditors have the like right

to so insist, as against complainants. Neither the charter of the company, nor the laws of Connecticut, in any way provide that creditors or policy-holders residing in Iowa shall have a prior right to, lien on, or equity in, the assets of the company found in Iowa, in case of a dissolution of the company, and no such provision is found in the policies issued to complainants.

Do the statutes of Iowa secure, or attempt to secure, any such superior right to its citizens? By section 1164 of the Code it is provided that no person shall act as agent in Iowa for any insurance company organized in any other state unless it has been made to appear that such company has invested, in certain named kinds of securities, the amount of capital named, such stock and securities to be deposited with the auditor, comptroller, or chief financial officer of the state under whose laws the corporation is created, or *some other state*, to be by him held "in trust and on deposit for the benefit of all the policy-holders of such company."

The statutes of Iowa provide, as the essential condition to the admission of foreign companies into the state, that the capital stock and securities named shall be a trust fund for the benefit of all policy-holders, and there is no provision of the statutes which provides that the Iowa creditors shall be given a preference over other policy-holders in the distribution of the assets in Iowa, in case of insolvency. The laws of Iowa, as well as those of Connecticut, recognize the fact that "equality is equity," when the assets of the insolvent corporation are to be distributed. As there is not to be found in the statutes of Iowa any provision attempting to secure superior rights to Iowa creditors in the assets of the company situated in Iowa, and as the charter of the company does not confer such, it follows that, if the Iowa creditors have such superior right, it must be based upon the idea that the state recognizes the claims of Iowa citizens to property found in the state to be always superior to those of non-residents; and, if this be true, then, in all cases of administration of estates, assignments for benefit of creditors, creditors' bills, foreclosure of railroad and other mortgages, and in all other cases in which a court of equity is called upon to marshal assets and distribute the same, the superior equity of the citizens of Iowa must be recognized, and the equally meritorious claims of non-residents must be postponed until the Iowans are paid in full. The statement of the proposition ought to be its sufficient refutation.

When the assets and fund to be distributed is a common one, derived from the payments made by all creditors, as in case of an insurance company, the fact that part or the whole of the assets may be invested in any one state does not give to the creditors residing in such state a superior right thereto. As already stated, the charter of the Charter Oak Company secures to its policy-holders and creditors the right to an equitable participation in the assets of the company, in case of insolvency and dissolution. To bring about such equitable distribution of its assets, the charter and laws of Connecticut provide for the appointment of a receiver to take charge of the property of the company in case of its disso-

lution, and the duty imposed upon such receiver is not materially different from that imposed upon the state superintendent under the Missouri statute construed in *Relfe* v. *Rundle.* For the purpose of collecting the assets of the company, he is the successor of the dissolved corporation. He is in fact a trustee, representing the interests of the stockholders and creditors of the company; deriving his authority not alone from the order of the court appointing him, but from the charter of the company and the statute of the state creating the corporation. To establish their rights as policy-holders, the complainants rely upon the provisions of the charter of the company, and, if the courts of Iowa can enforce the provisions of the charter and the rights conferred thereby in one respect, why not in another? The provisions of the charter estop the complainants, who, as policy-holders, are bound by its terms from denying the right of other policy-holders to an equitable participation in the assets of the company; and they cannot object to the enforcement of the method provided by the charter and laws of Connecticut, forming part thereof, for securing such equitable distribution in case of the dissolution of the corporation. An essential feature of such method is the appointment of a receiver, with power to take possession of all the assets of the company, wherever situated, and, when such receiver has been duly appointed in the mode provided for in the charter, the policy-holders cannot deny his authority.

The purpose of complainants is to defeat the equitable distribution of the assets of the company according to its charter, and to secure an unjust advantage to themselves, thereby violating the true meaning of the agreement entered into between themselves, as policy-holders, and the company; and they invoke the aid of a court of equity in so doing, upon the theory that the court cannot recognize a receiver appointed in a foreign jurisdiction. The rights of the policy-holders, however, are not dependent upon the latter proposition. Even if the Connecticut receivers could not maintain a right to the possession and control of the assets of the company in Iowa, that would not deny the rights of other policy-holders to a share in the proceeds thereof, and the question would then be how distribution should be made. The facts set forth in complainants' bill do not show that complainants have a superior equity in the assets in Iowa, but, on the contrary, it appears that such assets are a part of a common fund, in which all the policy-holders have an interest.

The bill shows that proceedings have been instituted in the proper court in Connecticut for the final dissolution of the corporation, and for the distribution of its assets among all its creditors; and to that end receivers have been appointed, with authority to take possession of the assets of the company, sell the same, and distribute the proceeds equitably among the creditors; and, in order to prevent the assets in Iowa from being taken possession of by such receivers, and distributed as provided for by the charter of the company, this court is asked to keep possession by its receiver, and to distribute the same among the Iowa creditors, to the exclusion of all others. As already said, the complainants do not

show that they have a superior right to the assets in possession of the court, but, on the contrary, all the policy-holders and creditors are equitably interested therein, and the property must be disposed of for the common benefit.

The petition filed by the receivers appointed in Connecticut asks that their right to the assets of the company may be recognized, and that the receiver heretofore appointed be discharged; that a receiver ancillary to the petitioners be appointed to take possession of the assets, convert the same into money, and to remit the proceeds to the petitioners for distribution in the proceedings pending in Connecticut. No objection to this mode of disposing of the assets is perceived, and the order will be made accordingly.

The demurrers to complainants' bill, and to the intervening petition of the several policy-holders, are sustained. The demurrers to the intervening petition of Brooks and Stedman, receivers, is overruled.