SMITH et al. v. TAGGART.

(Circuit Court of Appeals, Eighth Circuit. March 21, 1898.)

No. 992.

1. MUTUAL BENEFIT ASSOCIATION—INSOLVENCY—SEVERAL RECEIVERS—CONFLICT OF JURISDICTION.

A mutual benefit association, which was engaged in collecting money in small monthly installments from its members, who resided in many different states, and in investing the same for their joint benefit for future distribution, became insolvent before the period of distribution arrived; and in a proceeding to liquidate its affairs, which was commenced in New Hampshire, where the association was incorporated, a statutory assignee of its property and assets was duly appointed. In a proceeding subsequently begun in Colorado against the association, a receiver of its effects there located was appointed; and in such proceeding the New

Hampshire assignee intervened, and prayed that the Colorado assets might be transmitted to him for equal distribution among all the members of the association. *Held* that, from the nature of the association, a contract should be implied among its members, that, in the event of the insolvency of the association, all its assets, after debts due to nonmembers were paid, should be divided ratably among the members according to the several contributions to the common fund, without reference to their place of residence.

**2.** SAME—DISTRIBUTION OF ASSETS.

That the relation existing between the members of such association was different from that existing between the creditors of a decedent, and that the rule in force in some states, requiring the creditors of a decedent there residing to be paid in full out of the assets found in such states before transmitting them to the domiciliary administrator, was not applicable to the case in hand.

**3.** SAME.

That, without reference to their place of residence, all members of the association were entitled to participate ratably in the distribution of its assets according to their several contributions to the capital of the association.

**4.** SAME—TRANSMISSION OF ASSETS.

That, for the purpose of making such distribution, all the assets should be placed within the control of a single court, and that comity required such distribution to be made by the New Hampshire court, where the first proceeding to liquidate the affairs of the association was instituted.

**5.** SAME.

That a court of equity sitting in Colorado, and having charge of assets there located, could lawfully direct its receiver to transmit the same to the New Hampshire assignee.

Appeal from the Circuit Court of the United States for the District of Colorado.

The Granite State Provident Association (hereafter termed the "Association") is a corporation organized under the laws of New Hampshire, having its principal office at Manchester, in that state, for the purpose of doing an investment and loan business. It was quite a large concern, and, while it was doing business, it established agencies in about 20 states in the Union; among others, in the state of Colorado. The business of the Association was transacted by collecting money from its members in many small installments, for a considerable time, under a promise to return a greater amount at a time designated in the future. Its charter provided that it should carry on business "solely on the mutual plan." The manner in which its business was actually transacted was as follows: A person subscribed for stock in the Association, each share having a par value of $200. He paid to the Association $1 per month per share until the stock became worth par, or matured. These payments of $1 per month per share, with the accretions thereto and profits, it was estimated, would make the shares worth $200 at the expiration of 8 years, or 96 months. Such was the inducement held out in the prospectus of the company to induce persons to become members of the Association or shareholders. There were two classes of members in the Association: First, those who made use of their membership as a means of borrowing money; and, second, those who simply invested in the stock as a means of making a profit upon small savings. By far the greater number of the members belonged to the latter class. All dues to the Association were made payable at the home office in the city of Manchester, N. H., and it was agreed that the construction of all contracts of membership with the Association should be governed by the laws of New Hampshire. In March, 1896, the bank commissioners of New Hampshire filed a petition in the supreme court of that state, in accordance with a law of the state, alleging that they had made an examination of the affairs of the Association, and that the public safety, in their judgment, required that it should suspend business, and that its affairs should be liquidated and wound up. The supreme court of New Hampshire, on such petition, appointed David A. Taggart, the

appellee, statutory·assignee of the Association; his powers and duties being such as are usually devolved upon a receiver appointed by a court to liquidate the affairs of an insolvent corporation. Subsequently, two stockholders of the Association, who resided in the state of Colorado, filed a bill in the district court of Pueblo county, Colo., praying for the appointment of a receiver in the latter state. In compliance with such application, the district court of Pueblo county appointed Albert L. Murray as receiver of the Association for the state of Colorado, and the appointee is still acting in that capacity. Subsequently, by direction of the supreme court of New Hampshire, it was ordered that Taggart, the statutory assignee, transmit and turn over to the Colorado receiver, and to the local receivers who might be appointed in other states, the choses in action in his possession that were secured by property located in the various foreign jurisdictions. This order was evidently made by the New Hampshire court as a matter of comity, and to enable the various local receivers in foreign states to more easily and speedily collect the assets of the Association there located. In October, 1896, J. W. Smith and 64 other persons, who are the appellants, filed an intervening petition in the district court of Pueblo county, alleging, in substance, that they were stockholders of the Association resident in Colorado; that they had subscribed to its stock, and paid various amounts of money thereon; and praying that Murray, the local receiver, should hold ᵤᵤe funds realized from collections made in Colorado for distribution among the Colorado stockholders. This petition proceeded upon the theory that, as the association had ceased to do business, the various stockholders residing in the state of Colorado were entitled to judgment against the corporation for the several amounts of money which they had respectively paid on their stock. Thereafter· David A. Taggart, by leave of court, filed an intervening petition in the district court in said cause, which he prayed might be taken as an answer to the intervening petition filed by the Colorado stockholders, and also as a cross petition. He prayed, in substance, in such cross petition, that the fund realized by the local receiver in winding up the affairs of the Association in the state of Colorado, be turned over to him, to the end that all of the funds of the Association, when collected, might be ratably distributed among all the members of the Association. The case was subsequently removed to the circuit court of the United States for the district of Colorado, at the instance of the foreign assignee. In the federal court the case appears to have been heard upon the two intervening petitions heretofore mentioned, and certain exhibits which were offered in support thereof. At the conclusion of such hearing, the circuit court ordered and decreed that the funds collected by Albert L. Murray, the Colorado assignee of the Association, be applied and distributed in like manner as all other funds realized in winding up the Association, and, to that end, that the Colorado receiver be directed, after paying the expenses of his trust, to pay over the funds in his hands to David A. Taggart, the statutory assignee, to be by him accounted for in the supreme court of New Hampshire, for distribution among all the stockholders of the Association ratably. The case comes to this court on an appeal from such decree, which was taken by J. W. Smith and other Colorado stockholders.

Henry B. Babb, for appellants.

Charles E. Gast, for appellee.

Before SANBORN and THAYER, Circuit Judges, and PHILIPS, District Judge.

THAYER, Circuit Judge, after stating the case as above, delivered the opinion of the court.

To obtain a reversal of the decree of the circuit court directing the transmission of the Colorado assets to the domiciliary assignee in New Hampshire, the appellants invoke the rule which is ordinarily applied· where the estate of a decedent is being administered at the place of his domicile, and also in a foreign jurisdiction. They assert that a foreign administrator, unless a statute of the state

otherwise directs, is required to pay all debts proven against the estate in the foreign jurisdiction, out of the assets in his hands, before transmitting them, or any part thereof, to the domiciliary administrator, and that the same rule should be applied to the case at bar. We consider this rule inapplicable to the case in hand, because of the different relations which exist between the creditors of a deceased person and the members of an organization like the Granite State Provident Association, when it becomes insolvent. The members of the Association, under and by virtue of its charter and by-laws, were engaged in a joint or mutual enterprise. They shared alike in the profits of the Association, in proportion to the number of shares which they respectively owned, and they alike incurred the risk of loss incident to bad management or other causes. With respect to the Association, they occupied the same relation which stockholders bear to a corporation organized for business purposes. The money which they paid in under the name of "monthly dues" went to create the capital of the Association, which, by judicious management, was expected to make each share worth $200 at the expiration of 96 months. It cannot be said, we think, that the moneys paid to the Association in the shape of monthly dues constituted a loan to the Association in the ordinary sense; but they were moneys intrusted to it as to an agent or trustee, to be by it invested and accumulated for the common benefit of all the members of the Association, and to be eventually divided between them according to their several contributions to the common fund. Such being the nature of the Association and the purpose of its organization, we can perceive no just or reasonable ground upon which it can be held that, when the Association became insolvent, the residence or citizenship of a member determined the amount that he should receive in the distribution of the corporate assets. The share that each member is entitled to in such distribution is governed and determined by the contract existing between the members, rather than by their places of residence; and the contract which must be implied from the very nature of the organization is that, if anything happened to the Association,—if the venture proved unsuccessful,—the assets of the Association, after debts due to nonmembers had been paid, should be divided among the members according to their several contributions to the common fund. When the effects of a deceased person are administered in different states, no contractual relations exist between the different creditors of the estate. Each state, therefore, is at liberty to pursue its own policy with respect to assets found within the state. A state may provide that home creditors shall be paid in full out of local assets, before any are transmitted to the foreign administrator, or it may adopt a more liberal view, and make regulations which will secure a pro rata distribution of the assets of the estate among all creditors of the same class, both foreign and domestic. We think that the rule which governs in such cases has no application to the case at bar. Inasmuch, then, as a contract must be implied from the nature of the Association requiring its funds to be distributed ratably among all the members according to

their several contributions, it is manifest that such a distribution can be more conveniently and speedily made by a single court than by numerous courts sitting in different jurisdictions; and the rule of comity which prevails among courts, in our judgment, requires that the duty of making the distribution should be devolved upon the New Hampshire court, that being the court in which a suit to liquidate the affairs of the insolvent company was first filed. Applying the rules of comity, there can be no doubt, we think, of the right and duty of a court of equity which has acquired possession of a part of the assets to direct them to be transmitted to the court of primary jurisdiction, to the end that they may be there distributed ratably among all the members of the Association, in proportion to their contributions to the capital of the corporation.

The question which is presented by this record is not new, but has been considered at length and decided by the court of last resort of several states. It was held by the supreme judicial court of Massachusetts, in an elaborate opinion, in the case of Buswell v. Supreme Sitting, 36 N. E. 1065, that where a mutual benefit association, with a reserve fund held by the subordinate lodges in different states, but owned and controlled by the supreme lodge, became insolvent, and a receiver was appointed with power to collect the assets wherever found, and to wind up the association, ancillary receivers of the several branches should be ordered to transmit such reserve fund to the general receiver. The same view has been taken in the states of New Jersey, Louisiana, and Michigan (Ware v. Supreme Sitting [N. J. Ch.] 28 Atl. 1041; Durward v. Jewett [La.] 15 South. 386; Baldwin v. Hosmer [Mich.] 59 N. W. 432); and by several other courts as well (Failey v. Talbee, 55 Fed. 892; Parsons v. Insurance Co., 31 Fed. 305; Fry v. Insurance Co., Id. 197). See, also, Relfe v. Rundell, 103 U. S. 222. As these authorities are also in point on all the other questions which have been raised and discussed by counsel for the appellants, we deem it unnecessary to pursue the subject at greater length. It is to be presumed, of course, that the New Hampshire court will distribute the assets of the Association in the manner hereinbefore indicated; that is to say, among all the members in proportion to their contributions to the common fund. This application was made by the foreign statutory assignee, for the reason that they ought to be so distributed, and that a distribution such as ought to be made could not be made unless the assets were concentrated in the hands of the domiciliary assignee. We think, therefore, that the circuit court very properly declined to require any pledge to be given as to the method of distribution, as a condition precedent to the transmission of the Colorado assets to the New Hampshire assignee. The decree of the circuit court is therefore affirmed.