CENTRAL R. & BANKING CO. OF GEORGIA v. FARMERS' LOAN & TRUST CO. OF NEW YORK et al.

(Circuit Court, D. South Carolina. February 1, 1902.)

RECEIVER'S ACCOUNTS—MUTUAL CLAIMS.

For a system of railroads, at the head of which was the C. Co., and among which was the P. Co., the federal court for Georgia appointed H. receiver; and, the greater part of the P. road being in South Carolina, the federal court therefor, in ancillary proceedings, confirmed and recognized the appointment of H. as receiver of the P. road. Thereafter the federal court for Georgia dismissed the bill so far as it related to the P. road, and discharged such road from the custody of the receiver; and the federal court for South Carolina thereupon, by order contemplating that H. should account before the federal court for Georgia, adopted its decree of discharge. Thereafter A. was appointed receiver

for the P. road by the state court of South Carolina. *Held* that, as against claim of A. and his successor in interest for amount due the P. road by H. as such receiver, there could be set off claims against A., as receiver of the P. road, for supplies afterwards furnished him by H. and his successors, the receivers of the C. Co.

In Equity.

Smythe, Lee & Frost, for petitioners.

Lawton & Cunningham and Mitchell & Smith, for respondents.

SIMONTON, Circuit Judge. This case now comes up on a report of the special master upon the accounts of H. M. Comer, late the receiver of the Port Royal & Augusta Railway Company. Very much testimony has been taken. The report is very voluminous. The papers in the original report were in a confused condition,—a confusion removed in some measure by a second report, after recommittal of the original report. In order to reach a conclusion, a statement of facts in detail is needed.

The Central Railroad & Banking Company, a corporation of the state of Georgia, was in control of an extensive system of railroads within and outside of the state of Georgia. All of these roads were tributary to the center of the system, the Central Railroad & Banking Company, and were conducted in its interests. The accounts of the whole system—of each road in the system—were kept at Savannah in the office of the Central Railroad & Banking Company, and by its agents. Some of these tributary roads were owned by the Central Railroad & Banking Company, and others were under its control and domination by reason of its ownership of stock therein and of bonds having voting power. Among the roads of this latter class were the Port Royal & Western Carolina Railroad and the Port Royal & Augusta Railway, each of which had a terminus in the state of Georgia, the greater portion of each being in South Carolina. Both companies were incorporated in each of these states. On the 1st day of July, 1892, under proceedings in the circuit court of the United States for the Southern district of Georgia, in a cause entitled "The Central Railroad & Banking Company against the Farmers' Loan & Trust Company," the whole of the system of the complainant was placed in the hands of H. M. Comer, as receiver, with a view to preserve the integrity of the system. To these proceedings the two Port Royal corporations were made parties. As the greater part of these two railroads were within the district of South Carolina, ancillary proceedings were instituted in this court for the purpose of facilitating the control of the receiver appointed in the court in Georgia, and the appointment of H. M. Comer as receiver was recognized and confirmed in this court. The whole system had been conducted as a unit, and the administration of H. M. Comer was upon the same line and was governed by the same purpose. As was said by this court, when the order appointing Comer receiver was filed here, it put him in the place of and with the same powers that the Central Railroad & Banking Company had. On the ——— day of ———, 1893, the circuit court of the United States for the Southern district of Georgia dismissed so much of the original bill as related to the Port Royal & Western Carolina Railway and the Port Royal

& Augusta Railway, and discharged and released from the custody of H. M. Comer, receiver, these two corporations. So soon as this court received official information of this action on the part of the court of original jurisdiction, it adopted and confirmed its decree, and, as that court had done, ordered Comer, receiver, to turn over to the Port Royal & Augusta Railway Company all the property and effects of said company in his hands as receiver. In the meantime certain proceedings were had in the court of common pleas for Aiken county, in the state of South Carolina, by King et al. against the Port Royal & Augusta Railway Company, wherein John H. Averill was appointed receiver. This cause was removed into this court, and Mr. Averill was recognized as receiver. This, however, was subsequent to the discharge of H. M. Comer, and after the order adopting the action of the Georgia court. So Mr. Averill was not the successor of H. M. Comer in the sense of one substituted in his stead, but he occupied his place as receiver under wholly different authority. He was the appointee of a state court, and when the cause was removed into this court, coming over in the same plight as it left the state court, Mr. Averill's receivership came with it. Duncan v. Gegan, 101 U. S. 810, 25 L. Ed. 875; Hinckley v. Railroad Co., 100 U. S. 153, 25 L. Ed. 591. The order of this court confirming the action of the circuit court for the Southern district of Georgia, discharging Mr. Comer from his receivership of the Port Royal & Augusta Railway, instructed him when his accounts as such receiver had been rendered to the circuit court of the United States for the Southern district of Georgia, and had been approved by said court, he must file a certified copy thereof with the clerk of this court. The record does not show whether this was done. But in June, 1893, J. H. Averill, receiver, filed his petition in this court, stating that Mr. Comer, as receiver, had not turned over any money or property to him, and praying that he be made to account. Whereupon an order was entered in July following, requiring Mr. Comer to account for his actings and doings as receiver of the Port Royal & Augusta Railway. The order of this court terminating the receivership of Mr. Comer, above referred to, contemplated that he should account before the circuit court of the United States for the Southern district of Georgia for his actings and doings as receiver of the Port Royal & Augusta Railway, and that on such accounting a certified copy thereof should be filed in this court. This proceeded upon the theory that this special receivership was a part of the receivership of the entire system, and so its accounting should be had at the court of original jurisdiction. Inasmuch, however, as no evidence of such accounting as contemplated in the order appeared, this order of July, 1893, was made. An account having been filed, and finally corrected by Mr. Comer, receiver, under that order, it was referred to D. B. Gilliland, Esq., as special master, and his report thereon will be considered hereafter. .

The proceedings in the matter of the Central Railroad & Banking Company, in the circuit court of the United States for the Southern district of Georgia, culminated in an order of foreclosure and sale of all the property and assets of every kind of that great system, and Ryan and Thomas became the purchasers. Ryan and Thomas there-

upon filed their petition in that court stating that the purchase was made by them pursuant to a plan formed between them and divers of the mortgagees, lessees, and other creditors of the Central Railroad & Banking Company looking to the formation of a new company; that they were also owners of a large number of securities formerly of the Railroad & Banking Company; that all the accounts of the receivership had been to a large extent wound up, though there were still in existence many claims whose collection would involve litigation and delay. They asked to be put in possession of all the assets of the receivership, they assuming all its outstanding obligations. On 5th February, 1896, the circuit court of the United States for the Southern district of Georgia granted the prayer of the petition, and directed the receivers to carry it out, subject to the outstanding obligations. The company referred to in this petition of Ryan and Thomas was formed under the name of the Central Railroad of Georgia. To it Ryan and Thomas conveyed all the railroad property and all the assets of the receivership, excluding therefrom any claim against the Port Royal & Western Carolina Railway and the Port Royal & Augusta Railway. Thus, the entire interest of the Central Railroad & Banking Company in these two South Carolina roads remained in Ryan and Thomas, subject, of course, to the condition of the order that they assume the obligations of the receivership as to them.

As has been seen, the Port Royal & Western Carolina Railroad was placed in the hands of Mr. Comer as receiver by the circuit court in Georgia. In May, 1893, an order was entered in this court appointing John B. Cleveland as receiver, not as successor to Comer, but as an original appointment; the court carefully drawing the distinction between Comer's position and his. Finally, under decrees for foreclosure, the property was sold November 20, 1895, to Thomas and Ryan as purchasers, who afterwards procured the incorporation of the Charleston & Western Carolina Railroad Company, and transferred to it the property purchased. After their purchase of the Port Royal & Western Carolina Railway, Ryan and Thomas presented their petition on 6th November, 1896, to the court, showing that they held certain preferential claims against the receivership of that road, assigned to them by the receivers of the Central Railroad & Banking Company, and offering to receive in full of their claim all the choses in action, etc., of the receivership, agreeing to pay all of its liabilities. This petition was granted, and the transfer made on this condition. On 2d February, 1899, mutual releases were executed between Thomas and Ryan and the Charleston & Western Carolina Railway of this claim, and of all others of every kind.

On 1st September, 1896, the mortgages upon the Port Royal & Augusta Railroad Company were foreclosed, and the property covered by them sold. At that sale Thomas and Ryan became the highest bidders, and they transferred their bid to the Charleston & Western Carolina Railway. The conveyance was made to this company by the master. Afterward, upon its petition, all the choses in action and property of that description held by the receivers were transferred to the Charleston & Western Carolina Railway Company, it assuming all the claims against and obligations of the re-

ceiver. Being thus possessed of all the rights of Receiver Averill in the choses in action and accounts of the Port Royal & Augusta Railway, the Charleston & Western Carolina Railway Company intervened in this suit, and claim all the results of the accounting of Comer, receiver.

This leads to a discussion of the account filed by him in this court. This account, as finally presented, is as follows:

**H. M. Comer, Receiver, to Port Royal and Augusta Railway Company, Dr.**

| | | |
|---|---:|---:|
| To earnings of road from July 1, 1892, to April 25, 1893 | $236,968 97 | |
| Less amounts due by agents and C. & S. R. R., statement attached | 1,920 61 | |
| | | $235,048 36 |
| By operating expenses, July 1, 1892, to April 25, 1893 | $215,669 98 | |
| By rails laid, as per statement attached | 9,210 05 | |
| | | 224,880 03 |
| | | $ 10,168 33 |
| To sundry bills due receiver, as per statement attached | | 21,085 70 |
| To amount due H. M. Comer, receiver | | $ 10,917 37 |

The items $235,048.56 and $215,669.98 are not disputed. The items of credit $9,210.05 and $21,085.70 are in controversy.

By a memorandum made by the master, at a reference held in Savannah, 24th November, 1893, in the presence of counsel, it is stated that "no question is made as to the actual amounts which have been charged up, subject, however, to their [right of counsel] right to make any legal objections to the impropriety of the charges having been made or to the mode of prorating adopted by the Central Railroad and Banking Company." It is impossible to learn from the record to what this memorandum refers. So far as one can conclude from the trend of the argument, it does not apply to the item $9,210.05, and possibly, but not certainly, may apply to the item $21,085.70.

The vouchers for the item $9,210.05 are as follows:

**Port Royal & Augusta Railway, to H. M. Comer, Receiver. Dr.**

| | |
|---|---:|
| To 214,406 ft., 1,435.75 tons, secondhand 45 lb. iron, at $21.00 per ton, including fastenings, laid on main stem Port Royal and Augusta Ry. | $30,150 75 |
| To 13,894 ft., 111.65 tons, secondhand 54 lb. steel, laid between 52 and 53 M. P., and "Y" at Yemassee, at $25.00 per ton, including fastenings | 2,791 25 |
| To 9,600 ft., 77.14 tons, secondhand 54 lb. steel, laid in cotton yard, Augusta, at $25.00 per ton, including fastenings | 1,928 50 |
| | $34,870 50 |

**Contra.**

| | | |
|---|---:|---:|
| By 1,383.38 tons scrap rail, at $18.23 7/10 | $25,228 73 | |
| By 41,260–2,240 tons frogs | 431 72 | |
| | | 25,660 45 |
| Balance due H. M. Comer, receiver | | $ 9,210 05 |

The vouchers for the other items will be discussed hereafter.

The master was instructed to report the testimony. All legal questions were thus reserved to be made before the court. When the report of the master came on to be heard in February, 1900, it was recommitted to him, with instructions to ascertain: (1) When the rails for which Mr. Comer seeks credit were furnished, during, before, or after his receivership. (2) Were they laid on the track and property of the Port Royal & Augusta Railway Company? (3) How were they obtained? Were they furnished by the Port Royal & Western Carolina Railway Company and by the Central Railroad & Banking Company of Georgia, and charged against the Port Royal & Augusta Railway Company as a debt of the latter company, as the account in the receiver's report would indicate? or were they procured by the receiver from these companies, and paid for out of net earnings of his receivership or otherwise? (4) What is meant by "net earnings" in the vouchers of the receiver? Does the term mean only the balance on this particular account? or is it the result of all the operation of the railway, after a deduction of all expenditures, for every purpose, from the gross amount earned?

1. The testimony submitted by the special master in response to these questions has been carefully examined. It is impossible to escape the conclusion that the rails for which Mr. Comer seeks credit were furnished during his receivership.

2. The items $30,150.75 and $2,791.25 are for rails laid on the main stem of the Port Royal & Augusta Railway. The item $1,928.-50 was for rails laid down in the yard at Augusta upon land the property of this railway company. The rails so laid down were used by the Central Railroad & Banking Company, and by the two Port Royal Railroads, all of these roads being then under the control and management of H. M. Comer, the receiver of the system to which all of the roads belonged, which control and management was under the domination of the system and for its interest.

3. The rails so laid down on the Port Royal & Augusta Railway were furnished by Comer, receiver of the Port Royal & Western Carolina Railway, to himself as receiver of the Port. Royal & Augusta Railway, charged against the receivership of the latter road, and credited to the receivership of the former road; these renewals of rails being an incident in the management of the system under the control of Comer, the charges and the credits having been made on the books of the receivership of the Central Railroad & Banking Company. The receiver had authority to do this in the interests of the property in his charge. Cowdrey v. Railroad Co., 1 Woods, 336, Fed. Cas. No. 3,293. Testimony has been introduced tending to show that the iron was charged at an unreasonable price. The account was filed in 1894. The testimony was taken as late as April 23, 1901. At this late day the principal party is dead, and the chief witnesses either dead or removed to parts unknown, and cannot be here and speak to or explain the transaction. So many years having passed when the matter could have been and was not brought up, the ends of justice will best be served in accepting the statement of the account.

4. The item for rails in the yard at Augusta should also be allowed. They were laid upon the property of the Port Royal & Augusta Railway, and passed with this property to the purchaser. It is true that the track so laid was used by other roads in the same system. Such use during the receivership of course was the result of the domination of the system, and in accordance with the purpose of the receivership, the preservation of the integrity of the system. Its use during the receivership of Mr. Averill, if against his wishes, could have been prevented or paid for.

These items having been allowed, there remains a balance of $10,168.33 to be accounted for. He seeks to reduce this balance by sundry bills for items due by Averill, receiver, to the receivership of the Central Railroad & Banking Company. The itemized statement in evidence begins with bills sent on 12th June, 1893, with a list following of subsequent dates, up to and including April, 1894. Comer ceased to be receiver of the Port Royal & Augusta Railway, April 24, 1893, and all the items were for repairs, supplies, and prorates furnished by or due to the receivership of the Central Railroad & Banking Company.

The petitioner, the Charleston & Western Carolina Railway Company, stands in the shoes of J. H. Averill, receiver, and is bound by all the equities which bound him. The case must be treated as if Mr. Averill, receiver, was the party seeking relief. If, therefore, Averill, as receiver of the Port Royal & Augusta Railway, demanding the balance of account from Comer, appointed ancillary receiver of the same railway, in proceedings connected with the system of the Central Railroad & Banking Company, and wholly distinct from those under which he held his appointment, is met by a statement of an account between him as receiver and the receivers of the system of the Central Railroad & Banking Company, could this be allowed to discharge such balance? It is important to understand exactly the position of Comer, receiver. He was appointed upon the bill of the Central Railroad & Banking Company, receiver of the entire system conducted under that name, including its subsidiary and controlled roads, among these the Port Royal & Augusta Railway. The bill was filed to preserve the integrity of the system of which the complainant was the center and exponent. Having been appointed with this purpose, ancillary bills were filed in this jurisdiction, and his appointment was recognized and confirmed. The order of this court was passed out of comity with the circuit court of the United States for the Southern district of Georgia, carrying out its purposes and accomplishing its ends. Comer was treated as the representative of the system, and was put in the place of, and with the same powers as, the Central Railroad & Banking Company. So complete was this representation, and so manifest the sole purpose of the recognition of Mr. Comer as head of the system, that when the court of original jurisdiction reversed its action, revoked so much of Mr. Comer's appointment as put the Port Royal & Augusta Railway as a part of his receivership, dissociated that railway from the system, and directed Comer to surrender the property to the company, this court, upon official

notice of that action, at once adopted and enforced it. This is the language of this court:

"It is ordered and adjudged that the prayer of said petitioner be granted so far as to discharge and release from the possession of this court and its receiver in the above-entitled cause the Port Royal & Augusta Railway, and all property and effects of the Port Royal & Augusta Railway Company; and it is further ordered and adjudged that H. M. Comer, Esq., receiver, do forthwith turn over to the Port Royal & Augusta Railway Company all the property and effects of said company in his custody as receiver, and that as receiver of the Port Royal & Augusta Railway Company, its property and assets, the said H. M. Comer be, and he is hereby, discharged."

More than this, in discharging him this court further ordered:

"That when the accounts of said Comer, as receiver, of his operation and management of the Port Royal & Augusta Railway Company, during the period he has held possession of the same, shall be rendered to the circuit court of the Southern district of Georgia, the court of primary jurisdiction, and shall have been approved, a certified copy thereof must be filed by him with the clerk of this court."

So that, while Comer was recognized and confirmed as receiver in this jurisdiction, it was because he was discharging his functions as receiver of the whole system of the Central Railroad & Banking Company and its associated and dependent roads to which he had been appointed by the court in Georgia. And this view is emphasized by the fact that he was instructed by this court to render his accounts as receiver of the Port Royal & Augusta Railway to the court of original jurisdiction, filing in this court a certified copy thereof after approval in that court. This is in accord with the practice of the federal courts in cases of ancillary receiverships. Beach, in his work on Federal Procedure, discussing the matter of ancillary receiverships (at section 617), says:

"In such cases an ancillary bill is filed in each of the courts of ancillary jurisdiction, and an order entered confirming the original appointment of the receiver, recognizing the court in which the first bill was filed as having primary jurisdiction over all the property and assets of the defendant railroad company, wherever situated."

In Ames v. Railroad Co. (C. C.) 60 Fed. 966:

"The receivers of a railroad system must report to and be governed by the circuit court sitting in the district of their original appointment in all matters relating to their general management of the trust, their general accounting, and the general operation of the road within the circuit."

The same principle was followed in Clyde v. Railroad Co. (C. C.) 56 Fed. 539; Ex parte Powell, Id. And it is stated to be the general law as to insolvent corporations in Smith v. Taggart, 30 C. C. A. 563, 87 Fed. 94. The conclusion drawn from all the cases is that it is the duty of an ancillary receiver, after paying the expenses of his receivership, to account with and remit to the receivers in the original jurisdiction all funds and assets in his hands. This being so, the balance in the hands of Comer, receiver of the Port Royal & Augusta Railway Company, was property of the receivership in the original jurisdiction, to be accounted for by it. It is true that the circuit court of the United States for the Southern district of Georgia reversed its action with regard to the Port Royal & Augusta Railway, and held that it was without jurisdiction. But Comer,

appointed receiver under the original order, was, at all events, receiver de facto. Ralls Co. v. Douglass, 105 U. S. 730, 26 L. Ed. 957. This action of the Georgia court could not be reversed by this court. On the contrary, it was entitled to all respect, and the recognition and affirmance of that order by this court clothed Comer with all the powers, and subjected him to all the duties, of ancillary receiver.

After Mr. Averill became the receiver of the Port Royal & Augusta Railway in the case of King et al. against that corporation, under the appointment of the state court, and so recognized after the removal of the cause into this court, he kept up for a time the same friendly relations which had existed between his road and the system of the Central Railroad & Banking Company, conducted by its receivership. He had his traffic arrangements with it, got supplies from it, had his repairs made in its shops, and so incurred the bill now presented. So, when he seeks to obtain the balance he claims as the result of the ancillary receivership of Comer, -a balance, as we have seen, properly distributable in the court of original jurisdiction,—he is met by this counterclaim or offset of the receivership of the system. Admitting the balance, it claims that it has been extinguished by subsequent transactions which occurred between the date of the account and the period of the accounting. It is true that this offset is made out in the names of Comer and Hayes, receivers. But this does not affect it. A receivership is a continuing condition analogous to a corporation sole. The claim belongs to the receivership, not to the person of the receiver. McNulta v. Lochridge, 141 U. S. 327, 12 Sup. Ct. 11, 35 L. Ed. 796; Association v. Alderson, 39 C. C. A. 609, 99 Fed. 494. In my opinion, the account set up, due to the general receivership of the Central Railroad & Banking Company system, is good as against this balance in the hands of the ancillary receiver.

At the hearing a number of tax receipts, showing payment of taxes on the Port Royal & Augusta Railway for the year 1892, were presented. They are all in the name of the Central Railroad & Banking Company of Georgia. These items of taxation are not mentioned in any account filed, nor is the court in possession of sufficient information with regard to them. It would appear that these items had already been credited in the receiver's accounts, by anticipation as it were, although the actual payments were made afterward; that is to say, the total amount of tax to be paid was divided between the months of the year, and each month was credited in its account with its proportion of tax. At the end of the year, when the taxes were payable, the actual payment was made. However, if counsel desire, this can be made a matter of reference.

Let an order be taken dismissing the intervention of the Charleston & Western Carolina Railway Company.