SOUTHERN BUILDING & LOAN ASS'N OF KNOX COUNTY, TENN.,
et al. v. MILLER.

(Circuit Court of Appeals, Fourth Circuit. November 6, 1902.)

No. 444.

1. BUILDING AND LOAN ASSOCIATIONS—INSOLVENCY PROCEEDINGS—DISTRIBUTION
OF ASSETS.

Where the affairs of an insolvent building and loan association, having
shareholders and assets in many different states, are being wound up by
a court of equity of the state of its domicile, by whose laws its contracts
and the rights of its shareholders are governed, such court should be re-
garded as the court of primary jurisdiction; and courts in other states,
whether state or federal, which have collected assets of the association by
their receivers either in ancillary or original proceedings, in the exercise
of a sound judicial discretion should remit the net amount of such
collections remaining for distribution among the shareholders to the
domiciliary court, that the distribution may be equitably made between
all the shareholders.

Appeal from the Circuit Court of the United States for the Western
District of Virginia.

See 49 C. C. A. 21, 110 Fed. 35.

R. M. Page and Jerome Templeton, for appellants.

I. H. Larew, for appellee.

Before SIMONTON, Circuit Judge, and MORRIS and WAD-
DILL, District Judges.

MORRIS, District Judge. This is an appeal by the Southern
Building & Loan Association of Knox County, Tenn., by George
Young, by a great number of others, who are stockholders in said
association, and by D. A. Carpenter, receiver of said association, ap-
pointed by the chancery court at Knoxville, in the state of Tennessee.
The appeal is from an order of the circuit court of the United States
for the Western district of Virginia, entered July 3, 1901, which dis-
missed the petition of the said appellants, filed by direction of the
chancery court at Knoxville, praying for an order directing that the
funds in the hands of J. R. Miller, the receiver appointed by the circuit
court for the Western district of Virginia, be transmitted to the chan-
cery court of Knox county, Tenn., or its receiver, for general distribu-
tion among all stockholders of the association, and from the order of
said United States circuit court for the Western district of Virginia,
directing its receiver, Miller, to retain all funds coming to his hands
for distribution by and under the orders of the circuit court of the
United States for the Western district of Virginia, wheresoever the
claimants might be or reside.

The first bill in order of time for the winding up and distribution of
the assets of the Southern Building & Loan Association of Knox
County, Tenn., a corporation of Tennessee, having its home office and
domicile at Knoxville, in that state, was filed by Linda H. Johnson, a
citizen of Indiana, in behalf of all stockholders and creditors, on Janu-
ary 20, 1897, in the United States circuit court for the Northern divi-
sion of the Eastern district of Tennessee, at Knoxville, and imme-

diately thereafter the same complainants, on January 27, 1897, filed the bill in the present case in the circuit court of the United States for the Western district of Virginia as a dependent and ancillary bill in and of the complainant's bill filed in Tennessee, and prayed the appointment of a receiver, and all proper orders and decrees necessary to convert the assets of said association in the Western district of Virginia into money, and transmit the same to the Tennessee court for distribution. It so happened that upon further consideration of the bill filed in the circuit court of the United States at Knoxville, Tenn., the judge of that court, upon report of its special master, was of opinion that the association could successfully continue business, and on March 19, 1897, he dismissed that bill, and discharged the temporary receiver. Thereupon another bill was filed on April 16, 1897, by J. T. Barrow and others, against the association, in the chancery court at Knoxville, Tenn., and such proceedings were had that D. A. Carpenter became the receiver of the assets of the association. The association had many mortgage investments and borrowing stockholders in 17 different states, and proceedings were instituted and receivers appointed in those states to collect its assets, and it is stated that all those courts except the court in which the present case is pending in the Western district of Virginia are remitting the funds for distribution to the chancery court of Knox county, Tenn., and have remitted collections amounting to over $700,000, recognizing it as the principal or domiciliary court of primary jurisdiction at the domicile of the association, which should be permitted to distribute the funds of the association. It appears that there are over 7,000 stockholders, residing in a great number of states, entitled to share in these funds, the aggregate amount of whose free outstanding stock was $2,026,347.63. It further appears that nearly all the stockholders of the association, including a large portion of those whose residence is in the Western district of Virginia, have filed their claims as stockholders in the Tennessee court, and have received the dividends which have been there declared. Only about $15,000 of stockholders' claims have been filed in the circuit court for the Western district of Virginia. Those who have filed their claims in that court have been paid, by order of that court, the same dividend which was declared by the Tennessee court. The amount due to the association from loans in the Western district of Virginia was about $180,000. On May 6, 1897, by decree of the chancery court of Knox county, the association made a deed of all its assets to Receiver Carpenter, and especially of all the notes and mortgages of borrowing stockholders and other debtors. At the time of the appointment of the receiver by the chancery court of Knox county and the making of said deed to its receiver there were in the company's office at Knoxville, Tenn., notes and mortgages belonging to the association, due from residents of the Western district of Virginia, amounting to $179,628, and these were delivered to Receiver Carpenter, and were by him, under order of said Knox county court, all delivered into the custody of the United States circuit court for the Western district of Virginia, and for some four years it has been Receiver Miller's duty to reduce them into money. There is no sug-

gestion that the chancery court at Knoxville and its receiver is not faithfully administering the affairs of said association, with full protection to all claimants, and distributing the funds as collected by declaring dividends to all shareholders from time to time.

It is obvious that if each of the courts in the 16 different states in which it has been necessary to have receivers appointed to collect the mortgage debts due by borrowing members of said asssociation is to proceed to call in all the installment shareholders, and independently to consider their claims, and to adjudicate their rights and make distribution among them of the amounts collected by each of said courts, intolerable expense, delay, and confusion is sure to result; while, on the contrary, if the funds are transmitted to the Tennessee court, which is the court of the domicile of the asssociation, where already very nearly all the stockholders have filed their claims, the distribution can continue to be made in an orderly and proper way with the least delay and cost. The one method is so sensible, equitable, and practical, and the other so wasteful and impractical, that it is hardly to be supposed, there being no creditors in the Western district of Virginia, that the petition asking for the transmission of the funds, after making proper provision for expenses, costs, and allowances, would have been refused, except for a consideration now about to be mentioned. The bill in the present case, filed by Linda H. Johnson, was originally filed as a professedly ancillary and dependent bill in aid of the bill filed by her in the United States circuit court at Knoxville, Tenn. That original bill in the circuit court was dismissed, and there followed the bill, seeking substantially the same relief filed by J. T. Barrow and others, in the chancery court of Knox county, against the association, in which the association was adjudicated insolvent, and the appellant Carpenter was appointed receiver. Thereupon Linda H. Johnson filed her supplemental bill in the present case in the Western district of Virginia, reciting the foregoing facts, and representing to the court that since the temporary receiver had been appointed in that court suits had been begun against the association in various state courts of Virginia, and that, if the cause should be dismissed, and said suits allowed to mature, and numerous and conflicting receiverships be thereby allowed to take the assets of the association, there would be loss to the stockholders, and she prayed the court to retain the cause as an original proceeding for the benefit and protection of the stockholders and creditors of the defendant association. The defendant association answered the amended bill, admitting its averments, and that the receivers appointed by the chancery court of Knox county were winding up its affairs as an insolvent corporation, and that it would be necessary for the court to appoint receivers to take charge of its assets in the Western district of Virginia, and collect the same, and under proper directions of the court to transmit the same to the chancery court of Knox county, there to be distributed to the association's stockholders. Thereupon, on July 5, 1897, J. R. Miller was appointed permanent receiver, and directed to file a bond in the penalty of $10,000, and to take charge of all the property and assets of the assoction within the jurisdiction of the court, and directing that all causes

of action and claims against the association within the Western district of Virginia should be settled in that suit.

It is contended by the receiver, J. R. Miller, the appellee, that the filing of the amended bill changed the character of the proceeding, so that it became an original bill, devolving upon the court the right and duty to proceed to the end with it as an original bill, without reference to any other court or proceeding, or, at any rate, putting it entirely within the judge's discretion whether the court should do so or not. This view overlooks the essential character, object, and intention of the resort to courts of equity in this class of cases. Such bills are quite different from simple creditors' bills in cases in which the complainants and interveners have no contractual relations with each other. In the present case all creditors, if there were any, have been settled with, and the only claimants of the funds now in the circuit court for the Western district of Virginia are the stockholders of the association, who are under either an express or an implied contract with each other, arising out of the mutual character of the association, that its funds shall be ratably divided among all its members according to their respective contributions as shareholders; and it also appears that their subscriptions to stock were made with especial reference to the laws of Tennessee, and to be governed by the laws of that state. The supplemental and amended bill filed by Linda H. Johnson exhibited to the court the decree which had been passed by the chancery court at Knoxville instructing its receiver to take into his possession the assets of the association, not only in Tennessee, but in all other states. The chancery court at Knoxville and its receiver came into possession of all the promissory notes, deeds, mortgages, evidences of debt, and books of account of the association, which were all kept at its home office in Knoxville, Tenn.; and its receiver having possession of them, and having title to them also, by the deed to him from the association, made to him by the court's order, delivered them, by order of the Knoxville court, to the receiver appointed by the circuit court of the United States for the Western district of Virginia for the purpose of being converted into money, in order that the net fund should be distributed by the court of primary jurisdiction, being the only court which has before it the material to enable it to determine without conflicting adjudications the questions arising among the stockholders, according to the law of Tennessee, by which law the stockholders are bound. Great confirmation of this view of the law is found in the fact that all of the courts in the 16 different states, with the exception of the one now appealed from, and perhaps one other, have recognized the necessity and propriety of transmitting the funds collected by them to the court of the domicile of the association, which is actively engaged in making appropriate distribution.

The principle underlying this rule has been stated and enforced in numerous cases. Smith v. Taggart, 30 C. C. A. 563, 87 Fed. 94; Parsons v. Insurance Co. (C. C.) 31 Fed. 305; Failey v. Talbee (C. C.) 55 Fed. 892; Buswell v. Supreme Sitting (1894) 161 Mass. 224, 229, 234, 235, 36 N. E. 1065, 23 L. R. A. 846. This last is a carefully considered opinion, covering most of the questions which arise in

the present appeal. We do not mean to rule that there can be no discretion exercised in dealing with the question of transmitting funds in cases similar to this; but it is a legal, and not an arbitrary, discretion, somewhat similar to the discretion exercised in determining whether a receiver should be appointed or an injunction issue, and upon what terms, and the court is charged with the duty of considering whether, under all the circumstances, it best subserves the interest of all the shareholders. In the present case every circumstance pointed to the wisdom and economy of transmitting the funds to the Tennessee court, and no fact or circumstance was urged against it at the time the application was made except the assertion by Receiver Miller of a naked legal right to hold on to the funds upon the ground that by the dismissal of the first suit in Tennessee, to which this suit was professedly ancillary, the Virginia court became by the amended bill filed therein the court of primary jurisdiction, entitled to the exclusive right to wind up the affairs of this Tennessee corporation. He claimed that to transmit the funds would be in derogation of Virginia stockholders, and he prayed the court to order that all the books, papers, notes, and evidences of debt pertaining to the business of the association be delivered to him, and that Receiver Carpenter be ordered to bring into that court all the money and assets of the association remaining in his hands undistributed, in order that the Virginia court might do justice to all parties in interest. The Tennessee court and its receiver had then been engaged for four years in collecting and distributing the funds of the association among the shareholders, without complaint, so far as appears, and there was, so far as appears, nothing urged against transmitting the funds to that court, except the opposition of the receiver.

It is proper to notice that in the transcript of record sent up with this appeal there are a number of papers having reference to a difference between counsel as to what the court below had really intended by its decision, and whether the decree fairly embodied the rulings orally announced by the judge. Much of this occurred when Judge Paul was seriously ill of the sickness which resulted in his lamented death, and when he may not have had in mind, and possibly was not well enough to have called to his attention by counsel, the inconvenience and difficulties likely to result from the order he signed.

The order and decree entered July 3, 1901, dismissing the petition of the appellants praying for an order directing that the funds of its receiver be transmitted to the Tennessee court, was a final decree on that subject-matter, and was, we think, error, and should be reversed, and also the decree adjudging that Receiver Miller retain all funds coming to his hands to be distributed by him under orders of the court to all claimants wheresoever the said claimants might be or reside, should be set aside, and the court should pass such orders as may be appropriate to carry this opinion into effect, securing to those shareholders who have filed their claims in the circuit court for the Western district of Virginia equality with those who have filed their claims in the Tennessee court.

Reversed.