Fry *v.* Charter Oak Life Ins. Co.

*(Circuit Court, E. D. Missouri, E. D.* June 11, 1887.)

Life Insurance Companies — Attachment — Sections 1, 2, Laws Conn. 1875, Pages 12, 13.

Laws Conn. 1875, pp. 12, 13, §§ 1, 2, provide, in the event that the capital of a life insurance company becomes impaired, it shall become the duty of the insurance commissioner to proceed against the company to annul its charter; and to wind up its affairs. The scheme of liquidation provided contemplates the audit and allowance of all demands against the corporation, including therein the reserve due on all outstanding policies, and an equitable application of all the corporate assets to the payment of the demands so audited. The defendant, a mutual insurance company of Connecticut, having become insolvent, the insurance commissioner, on September 21, 1886, began proceedings in the supreme court of errors of Connecticut to annul its charter, and wind up its affairs. On September 28th, policy-holders in Missouri commenced suits by attachment to recover the reserve value of their policies. *Held,* that all policy-holders of the company, whether residents of Connecticut or Missouri, were presumed to know the terms of its charter, and the laws regulating its existence, and were bound thereby, in the absence of special provisions for the benefit of its own citizens by the state of Missouri when the defendant was licensed to do business there; that, as the fund attached was not deposited for the benefit of resident policy-holders in Missouri, they can claim no lien thereon; and that the plaintiff must be remitted to his share in the equitable distribution under the proceeding previously commenced by the state of Connecticut, through its insurance commissioner, on behalf of all the policy-holders of the company.

*Geo. D. Reynolds,* for plaintiff.
*J. S. Fullerton,* for defendant.

Thayer, J. This is one of several suits by attachment pending in this court, brought by the policy-holders of the Charter Oak Life Insurance Company against the company, to recover the reserve value of their respective policies. The company is a Connecticut corporation. It became in-

solvent on or prior to September 21, 1886, and on that day the insurance commissioner of the state of Connecticut began proceedings against it in the supreme court of errors of that state, to arrest the further transaction of business, annul its charter, and wind up its affairs. In that proceeding receivers of all the corporate assets were appointed on September 22, 1886. On September 28, 1886, this suit was begun, and an attachment was levied on certain property of the corporation situated in Missouri. The suit is in the form of a suit at law, and is brought upon the theory that, when a life insurance company becomes insolvent, each of its policy-holders may sue upon their policies as for a breach of the contract of insurance, whether it be a stock or a mutual company. The general question to be determined is whether the plaintiff can maintain the action, and obtain a preference over other policy-holders, or whether he should be remitted to the proceeding which has already been inaugurated by the state of Connecticut through its insurance commissioner, in behalf of all the policy-holders, to liquidate the affairs of the corporation.

It may be premised that the company, since its charter was amended, in 1878, has been a mutual company, and has conducted all of its business on that plan through a board of directors elected by persons whose lives are insured. In the state of Connecticut laws have been enacted such as now prevail in very many states, whereby the commonwealth undertakes, through an officer known as the insurance commissioner, to exercise rigid supervision over the affairs of life insurance companies. All life companies are required to make annual reports of their condition to that officer, and to undergo periodical examinations as to their solvency. And, in the event that the capital of a life company becomes impaired at any time, it is made the duty of the insurance commissioner to take proceedings against it, with a view of annulling its charter and winding up its affairs. The scheme of liquidation provided by the Connecticut statute contemplates the audit and allowance, under the supervision of a court of general jurisdiction, of all demands against the corporation, including therein the reserve due on all outstanding policies, and an *equitable* application of all the corporate assets to the payment of the demands so audited. *Vide* Laws Conn. 1875, pp. 12, 13, §§ 1, 2. Such is a general outline of the scheme, which does not differ essentially from the Missouri statute on the same subject. With respect to the Charter Oak Life Insurance Company, it is no doubt true that the act in question forms a part of its charter to the same extent as if it was expressly incorporated therein. It is a general law of the state from which the defendant derives its existence, and is in terms made applicable to every life insurance company chartered by the state of Connecticut. Now, although the defendant is a foreign insurance company, its Missouri policy-holders are conclusively presumed to be acquainted with its charter, and the laws of the state of Connecticut which determine and regulate its existence, whether as a "going concern," or as an insolvent company, and to have assented thereto when they became members of the company. They are accordingly bound by the terms of its charter,

and the laws regulating its existence, to the same intent as policy-holders residing in the home state, unless some special conditions were imposed by the state of Missouri for the benefit of its own citizens when the defendant was licensed to do business in this state.    *Relfe* v. *Rundle*, 103 U. S. 222.

It will suffice to say that no conditions were imposed by the state of Missouri which in any sense modify the relation of Missouri policy-holders to the defendant company.    The defendant was not required to make any deposit in this state for the exclusive benefit of resident policy-holders.    The property which has been attached in this state was not deposited with any state officer, or with any trustee for the benefit of resident policy-holders.    It is property which the corporation has acquired in the state of Missouri in the ordinary transaction of its business, and no policy-holder can claim any lien thereon, or peculiar interest therein, because of his residence in this jurisdiction.

Upon the case stated the question arises whether policy-holders may seize the property of the company when it becomes insolvent, wherever found, notwithstanding the fact that the state of Connecticut has begun proceedings to wind up its affairs, and without reference to the rights of other policy-holders, and the provisions of the company's charter which, in the event of insolvency, contemplates a valuation of all outstanding policies according to the Connecticut table of mortality, and an *equitable* distribution of the corporate assets among all creditors and policy-holders.    In my judgment this question must be answered in the negative. The charter of the company, and the "winding-up act" of the state of Connecticut, which must determine the rights of policy-holders as between themselves, and as between themselves and the company, did not contemplate that there should be a mere "race of diligence," as between policy-holders, in the event of insolvency.    When plaintiff became a member of the company he assented to that form of supervision which the state of Connecticut undertook to exercise for the benefit of policy-holders over the affairs of the company while it was a going concern, and impliedly agreed that there should be a valuation of all policy obligations according to a certain standard, and an equitable distribution of the company's assets in the event of insolvency.    *Relfe* v. *Rundle*, *supra;* *Rundle* v. *Life Ass'n of America*, 10 Fed. Rep. 720; *Davis* v. *Life Ass'n,* 11 Fed. Rep. 784; *Taylor* v. *Life Ass'n,* 13 Fed. Rep. 493.

Every member of the defendant company has the right to insist upon that agreement, as against another member who is seeking an inequitable preference; and the company itself, so long as the proceeding on the part of the state of Connecticut is pending against it, has a right to invoke the agreement as against a suit of this nature.

There is another view of the case which, in my opinion, should preclude suits of this character, at least during the pendency of the proceeding in the home state.    The proceeding now pending in the state of Connecticut, as before explained, is essentially a suit by the state to annul the defendant's franchise, and liquidate its affairs.    It is a special statutory proceeding, applicable to insurance companies whose capital has

become impaired. In that class of cases it is the rule that the filing of the complaint by the state operates as a sequestration of the corporate property, for the purposes contemplated by the statute under which the proceeding is brought, from the filing of the complaint, and not merely from the entry of a final decree. *Atlas Bank* v. *Nahant Bank*, 23 Pick. 480; *Colt* v. *Brown*, 12 Gray, 233.

If the present attachment had been sued out and levied in the state of Connecticut after the commencement of the proceeding to wind up the company, and *prior* to the appointment of any receiver, the right acquired by the state as against corporate property, by filing its bill, would have prevailed over that of the attaching creditor. Such would clearly be the case with respect to property situated in the state of Connecticut; and, in my opinion, the commencement of the proceeding in the home state should have the same effect with respect to property located in the state of Missouri, as against this plaintiff, who is himself a member of the company, and, under the terms of its charter, is only entitled to an equitable proportion of its assets in the event of insolvency. If he was a general creditor, and not a member of the corporation, the rule might be different.

Upon the whole case my conclusion is that the present suit cannot be maintained. Plaintiff is a member of the defendant company, and as such is entitled to participate with other policy-holders in *a pro rata* distribution of its assets. A suit was pending in the home state to accomplish that result when this action was filed. The plaintiff in that case represents all the policy-holders, as well as other creditors of the company; the proceeding is for their benefit; and it is only by means of a suit of that character that the rights of all the policy-holders of the company can be secured. Nothing but confusion and inequality can result from entertaining a suit of this nature in this jurisdiction. It will accordingly be dismissed, without prejudice to plaintiff's right to intervene in the proceeding pending in the home forum.