[Civ. No. 1446.    Third Appellate District.—January 22, 1916.]

## E. E. HENDERSON et al., Respondents, v. PALMER UNION OIL COMPANY et al., Appellants.

RECEIVER—DISSOLUTION OF CORPORATION—EXPIRATION OF CHARTER—JURISDICTION OF SUPERIOR COURT.—Upon the dissolution of a corporation by expiration of its charter, the jurisdiction of the superior court to appoint a receiver is limited by the provisions of section 565 of the Code of Civil Procedure, as in all other classes of dissolution, to the particular superior court of the county where the corporation carries on its business, or has its principal place of business.

ID.—CONSTRUCTION OF CODE PROVISIONS.—The provisions of section 400 of the Civil Code and section 565 of the Code of Civil Procedure were not intended to apply in case of dissolution of a corporation by and according to any particular method.

ID.—TIME OF DISSOLUTION—EFFECT OF.—The provisions of section 565 of the Code of Civil Procedure are not rendered inapplicable to a

case where the corporation has been dissolved for a considerable time, because of the use of the words therein "upon the dissolution," as such phrase means "after dissolution," and is not limited to any particular lapse of time.

APPEAL from an order of the Superior Court of Alameda County appointing a receiver. William S. Wells, Judge.

The facts are stated in the opinion of the court.

Gavin McNab, R. P. Henshall, A. H. Jarman, Nat Schmulowitz, and B. M. Aikins, for Appellants.

Peck, Bunker & Cole, John W. Griggs, Henry G. Tardy, and Henry C. McPike, for Respondents.

BURNETT, J.—On the application of the plaintiffs made *ex parte,* based on a verified complaint and the execution of an undertaking in an amount fixed by the court and approved by it, the superior court of Alameda County made an order appointing one Samuel J. Taylor, a resident of said county, receiver of the court to take charge of the estate and effects of the Palmer Oil Company.

The complaint in the case is quite voluminous, and it seems unnecessary to set it out in detail. Respondents claim that the conditions for the appointment, stated in the complaint, sufficient to warrant said appointment are as follows: "(a) The charter of the Palmer Oil Company expired on the twenty-eighth day of March, 1913. (b) On that day, the defendants, Brown, Van Ee, Hilborn, Stratton, and Ladd, were all of its directors. (c) The plaintiffs, before the expiration of the charter, were and thence to the filing of the complaint continued to be stockholders. (d) Palmer Oil Company was a California corporation. (e) At the time of the expiration of its charter, Palmer Oil Company had estate and effects, debts and property due and belonging to it to be divided among its stockholders. (f) Frauds and improper conduct of directors warranting the action of the court on *ex parte* application."

As to this last specification it may be said that the acts of said directors are set out at great length, and there can be no doubt that the grossest fraud is thereby exhibited, and the utter unworthiness of said directors to occupy a position of trust and responsibility is disclosed.

The provisions of law on which reliance is had for said appointment are the following: "A receiver may be appointed by the court in which an action is pending, or by the judge thereof. . . . 5. In the cases when a corporation has been dissolved, or is insolvent, or in imminent danger of insolvency, or has forfeited its corporate rights; 6. In all other cases where receivers have heretofore been appointed by the usages of courts of equity." (Code Civ. Proc., sec. 564.) "Upon the dissolution of any corporation, the superior court of the county in which the corporation carries on its business or has its principal place of business, on application of any creditor of the corporation, or of any stockholder or member thereof, may appoint one or more persons to be receivers or trustees of the corporation, to take charge of the estate and effects thereof and to collect the debts and property due and belonging to the corporation, and to pay the outstanding debts thereof, and to divide the moneys and other property that shall remain over among the stockholders or members." (Code Civ. Proc., sec. 565.)

The questions concerning the appointment of receivers have been thoroughly considered by the supreme court in various decisions, and it would be presumptuous to attempt to add to the learning contained therein. For a somewhat general observation we may adopt the quotation made by respondents from the able opinion written by Chief Justice Beatty, in the case of *Havemeyer* v. *Superior Court*, 84 Cal. 327, [18 Am. St. Rep. 192, 10 L. R. A. 627, 24 Pac. 121], as follows: "When a corporation ceases to exist, from whatever cause, whether from lapse of time, voluntary dissolution or judgment of forfeiture for neglect or abuse of its powers, it necessarily results that its property is left to be disposed of according to law. . . . Some means must be provided for winding up the corporation and distributing its assets according to the equitable rights of those interested. In the absence of any statute regulating the matter, a court of equity would have the undoubted right, in a proper proceeding instituted by a creditor or stockholder, to appoint a receiver to administer the property. But in many of the states, statutes have been passed expressly providing for the appointment of receivers, or trustees exercising the same functions, though sometimes called by other names. In all cases, it is made their duty to collect

the assets, pay the debts and distribute the surplus *pro rata* to the stockholders.''

Here, as we have seen, the statute expressly provides for the appointment of receivers charged with said duty, and there seems to be no serious controversy as to the authority of the superior court to make the appointment in the cases provided for. There is, however, an earnest contention made by appellants that the jurisdiction to appoint a receiver in case of dissolution of the corporation is limited to the particular superior court where the corporation carries on its business or has its principal place of business. It is said in *State I. & I. Co.* v. *Superior Court of San Francisco*, 101 Cal. 135, 148, [35 Pac. 554] : ''The power of a court to appoint any persons in the place of those who are directors of the corporation at the time of its dissolution is given in section 565 of the Code of Civil Procedure, and the authority given therein is the measure of its power. That section gives to the superior court of the county in which the corporation carries on its business authority to appoint one or more persons to be receivers or trustees of the corporation upon its dissolution, 'on application of any creditor of the corporation, or of any stockholder or member thereof,' and unless such application is made the court has no authority to make the appointment. Its jurisdiction to make such appointment rests upon an application therefor by either a creditor or a stockholder, and can neither be invoked at the instance of a stranger, nor assumed by the court of its own motion.'' It was further held in that case that ''the power of the court recognized in section 400 of the Civil Code to appoint persons other than the directors or managers of the corporation, at the time of its dissolution, to settle its affairs does not authorize the court to take upon itself the power to settle its affairs or to appoint a receiver for that purpose.'' It must be apparent that if said section is the measure of authority in the premises, then no superior court other than that designated has jurisdiction to make such appointment, and since it appears in the complaint that said corporation was dissolved, it should further appear, so it is contended, that it did business or had its principal place of business in Alameda County. To the contrary, it appears that it had its ''several offices and places of business'' in San Francisco, Los Angeles, and Portland, Oregon. It must have carried on its business at its places of

business and, therefore, it is argued, the jurisdiction of the subject matter is in those counties.

Of course, when the legislature provides that the superior court of a certain county has authority to appoint a receiver, by necessary implication it excludes every other, and the section would have no additional significance-if it read: "The superior court of the county in which the corporation carries on its business or has its principal place of business and *no other* superior court . . . may appoint," etc. As to this contention respondents argue that "A fair interpretation of the language will show that nothing is accomplished by this act, than the mere assertion of jurisdiction which already existed independently of the statute and already resided just where the statute in terms placed it, to wit, in a court of equity. The original jurisdiction of equity gains nothing and loses nothing by the statute. It leaves the matter just where it found it, with powers as full and ample after its passage as they were before its enactment. We come now to a consideration of the words 'upon the dissolution.' . . . This language taken from section 18 of the act of 1850 [Stats. 1850, p. 349], to be understood in its full import, requires construction along the lines employed by courts in the interpretation of statutes, where there is any doubt as to its meaning. What is the meaning of the words, 'upon the dissolution of any corporation'? Ordinarily the word 'upon' is used in the same sense as 'on,' and the word 'on' is defined by Webster as meaning 'at the time of, with reference to some cause or motive; by virtue of; in consequence of; as on the ratification of a treaty, the armies were disbanded.' Read in connection with other words of the statute of 1850 from which it was taken, 'this section has a meaning entirely different from the meaning it has when standing alone. 'It is an established rule, in construing a statute, that the intention of a law-giver and the meaning of the law are to be ascertained by viewing the whole and every part of the act.' (Brown's Legal Maxims, p. 445.)

"Recurring to the statute of 1850, it will be seen that there was a scheme provided, complete in itself, for dissolving and winding up a dissolved corporation. The act treated of three methods of dissolution, one by direct act of the legislature; another by *quo warranto*, and a third by voluntary act of the corporation itself. Each of these supposed, and of necessity were, to act upon a living, going concern, one with a 'domi-

cile' in the state, by necessary construction, and with a place of business in some county within the state's territorial limits by its own selection. It was in co-ordination with these several methods of dissolution that the other sections of the statute were designed to act. These other sections are numbered 16, 18, and 31, which became, respectively, section 400 of the Civil Code, sections 565 and 803 of the Code of Civil Procedure, and sections 1227 to 1233 of the same code. . . . But there was one class of dissolution, for which no provision was made in the act of 1850, and, consequently, none in the codes. That is a case of dissolution by 'expiration of charter.' Dissolution by expiration of charter is the class to which the present case belongs. Nothing in the act of 1850 belonged to this class. . . . These initial words of section 16, 'Upon the dissolution of a corporation, *unless other persons shall be appointed* by the legislature, or by some court of competent authority,' were, excepting those in italics, all eliminated from section 400, when it was taken into the Civil Code; and it needs no great amount of insight to discern that the eliminated phrases confined the statute as originally passed to the methods of 'dissolution' provided for in other parts of the same act. This section must be construed *noscitur a sociis*, just as its lineal descendants, sections 400, 565, 803, and 1227 to 1233 must be construed.

"Now, what is the object of the foregoing analysis, and what application has it to the present case?

"Turn for a moment to the complaint and read: 'Said Palmer Oil Company on or about the 28th day of March, 1913, was dissolved by the expiration of its charter,' and 'filed October 9, 1913'; and it will appear that there intervened between the dissolution of Palmer Oil Company and the commencement of the action, the date of the application for the appointment of the receiver, about seven months.

"On the 28th of October, 1913, Palmer Oil Company ceased to exist. It died a natural death, and could no more have a 'principal place of business' or be 'carrying on business' seven months after its death, than could a rat survive the sinking of the ship that carries it.

"In the case of *Crossman* v. *Vivienda Water Co.*, [150 Cal. 575, 89 Pac. 335], the status of all dissolved corporations was defined by the supreme court in these words: 'It is settled beyond question that, except as otherwise provided by statute,

the effect of a dissolution of a corporation is to terminate its existence as a legal entity, and render it incapable of suing or being sued as a corporate body or in its corporate name. It is dead, and can no more be proceeded against as an existing corporation than could a natural person after his death. There is no one who can appear or act for it, and all actions pending against it are abated, and any judgment attempted to be given against it is void. As to this, all the text-writers agree, and their statement is supported by an overwhelming weight of authority.'

"How, may we ask, could Mr. York, who verified the complaint in this case, swear that on the 9th day of October, 1913, the Palmer Oil Company 'carries on its business,' or 'has its principal place of business' in Alameda County?

"Will the court construe 'carries on its business' or 'has its principal place of business' into 'carried on its business' or 'had its principal place of business'? The answer is, *ita lex non scripta est.* Would it not be a healthier construction, one in harmony with the fact and the law, to say, 'a dissolved corporation carries on no business, has no principal place of business in any county of the state,' and leave the application of the wronged stockholder, to be made to any superior court, holden in any county of the state, and leave the consequences of such an application to the effect of that other law, written all over the decisions of the supreme court, that a court of general jurisdiction having jurisdiction of the subject matter, first applied to, will retain jurisdiction for all purposes?"

There is plausibility in the views thus expressed, but to adopt them would be to violate, as we conceive, the plain provisions of the statute.

In the first place, there is no safe ground for holding that said section 400 of the Civil Code and section 565 of the Code of Civil Procedure were intended to apply in case of dissolution by and according to any particular method. No such indication is shown by the head-notes, the context or the body of the sections. The familiar rules of interpretation preclude any such contention. "Upon the dissolution" necessarily implies *dissolution* effected in any manner. It is the fact of *dissolution,* the termination of the existence of the corporation as such, that the statute contemplates. It matters not whether the dissolution is the result of the operation of law, the voluntary act of the parties, or is accomplished through *quo war-*

*ranto* proceedings—the legislature has seen fit to make no distinction as to the county wherein a receiver must be appointed, if at all. And it may be said that no reason is apparent why a distinction should be made. While the point has probably not been directly involved in any decision of the supreme court, it has at least been assumed that the section concerns both voluntary and involuntary dissolutions. For instance, in the Havemeyer case, *supra,* it was said that "Under section 400 of the Civil Code and 565 of the Code of Civil Procedure, *both of which refer to voluntary as well as involuntary dissolutions of corporations,* the administration and distribution of the assets of a dissolved corporation is left, as a rule, to the directors in office at the date of dissolution, though such dissolution be upon judgment of forfeiture; and the appointment of a receiver is an exception to the mode only in cases of neglect of duty or abuse of power by the directors when required for the protection of the rights of a creditor or stockholder."

Nor can we perceive the force of respondents' contention that the section does not apply where the corporation has been dissolved for a considerable period of time. If dissolution had occurred one day before the application for the appointment had been made, would respondents still contend that the section was inoperative? Or, if only a few hours had intervened, would the case call for a different rule? We think it would be a strained construction to hold that if the application for the appointment of a receiver is not made at the very instant of dissolution, we must not look to the said section 565 for guidance. It is at least perfectly clear that "upon dissolution" does not mean "before dissolution." The phrase undoubtedly means "after dissolution," and it is not limited to any particular lapse of time. It may include an application made immediately following the dissolution or one separated by quite a period of time.

Of course, after dissolution the corporation is not "alive," and it is not strictly accurate to say that it has a place of business. But if the section is to have any application at all, it must be in a case of dissolution, as by no possible construction can it refer to the appointment of a receiver for a going concern. The obvious conclusion is that the legislature contemplated the appointment of a receiver after dissolution at

the place where the corporation had its principal place of business or did business at the time of the dissolution.

Nor can we see any obstacle to the acceptance of this view in any provisions of the constitution. Said instrument clothes the superior court with original jurisdiction in cases of equity, and if it be said that the appointment of receivers is a branch of its equity powers, there is no inhibition upon the legislature locally to limit the exercise of this jurisdiction as provided in said section. Nor should the declared inconvenience of such course receive more than scant consideration. Whether it is convenient or as easy as some other course to comply with the terms of a statute is not regarded as a sufficient reason for disregarding its mandates. But it should not be difficult to ascertain where a corporation has had its principal place of business at the time of its dissolution. There is virtually such an allegation here, and respondents no doubt found it easy to make it, otherwise it would not appear, as they seem to attach to it very little importance.

It may be that the complaint could be amended so as to support an appointment made by the superior court of Alameda County, but, as the question is presented here, under the decisions of the supreme court and the language of said section as we understand them, the superior court is without authority to make such appointment.

There is much discussion in the briefs as to whether it is a suitable case for a receiver. We have examined the authorities in the light of the allegations of the complaint and we feel satisfied that a sufficient showing was made to authorize this exceptional proceeding. Manifestly, as Chief Justice Beatty said in the Havemeyer case, such step should not be taken unless necessary for the protection of the rights of creditors or stockholders, and it may be said, also, that, ordinarily, notice should be given before a receiver is appointed, but, in view of the allegations of the complaint, we cannot say that as to these considerations the court was at fault.

We think, though, the order should be reversed, and it is so ordered.

Chipman, P. J., and Hart J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on March 22, 1916.