CLARK, RECEIVER, *v.* WILLIARD ET AL., TRUSTEES, ET AL.

No. 449.  Argued February 15, 1934.—Decided April 2, 1934.

*Messrs. Reuel B. Cook* and *Edmond M. Cook,* with whom *Mr. M. S. Gunn* was on the brief, for petitioner.

*Mr. H. Leonard DeKalb,* with whom *Mr. Louis P. Donovan* was on the brief, for respondents.

By leave of Court, *Mr. Louis H. Pink* filed a brief on behalf of Mr. George S. Van Schaick, Superintendent of Insurance of the State of New York, as *amicus curiae.*

MR. JUSTICE CARDOZO delivered the opinion of the Court.

The question is whether full faith and credit has been given by the courts of Montana to the statutes and judi-

cial proceedings of the State of Iowa. United States Constitution, Art. IV, § 1.

The petitioner, the official liquidator of an Iowa insurance company, declares himself the universal successor of the corporation (*Keatley* v. *Furey*, 226 U.S. 399, 403, 404), the representative of its personality and powers after its life has been extinguished. *Relfe* v. *Rundle*, 103 U.S. 222; *Martyne* v. *American Union Fire Ins. Co.*, 216 N.Y. 183; 110 N.E. 502; *Deschenes* v. *Tallman*, 248 N.Y. 33, 37; 161 N.E. 321. The Supreme Court of Montana has held that his title to the assets, if he has any, is derived, not from any statute, but from an involuntary assignment under a judgment of a foreign court. A title traced to such a source is subject in Montana to attachment and execution at the suit of local creditors. The question has been left unanswered whether attachments and executions are enforcible to the same extent in derogation of the title of a statutory successor.

Federal Surety Company was organized as an insurance corporation under the laws of Iowa, and thereafter received authority to do business in Montana. In September, 1931, the State of Iowa sued it, alleging its insolvency and praying for a decree of dissolution and the distribution of the assets. A statute of Iowa provides that " the commissioner of insurance henceforth shall be the receiver and/or liquidating officer for any insurance company, association or insurance carrier, and shall serve without compensation other than his stated compensation as commissioner of insurance, but he shall be allowed clerical and other expenses necessary for the conduct of such receivership." Code of Iowa, 1931, § 8613–c1. See also Code of Iowa, 1931, §§ 8402, 8964. On September 25, 1931, a decree in favor of the state was entered by default, and an amended decree on December 22 of the same year. By these decrees the corporation was adjudged to have been dissolved on September 25, 1931;

the Commissioner of Insurance, E. W. Clark, was adjudged to be "the successor to said corporation," and as such to hold "title to all property owned by Federal Surety Company at the time it so ceased to exist"; and liquidation was decreed in accordance with the statute.

We have said that the corporation had authority to do business in Montana. The grant was subject to conditions. A statute of Montana provides that the dissolution of a corporation does not "take away or impair any remedy given against any such corporation, its stockholders or officers, for any liability which has been previously incurred." § 6013, Montana Revised Codes of 1921. The preservation of existing remedies is not confined to domestic corporations. It applies to foreign corporations also. This results, in the view of the Montana court, from a provision of the state constitution as well as from a supplementary statute. By Article XV, § 11, of the Montana constitution, "no company or corporation formed under the laws of any other country, state or territory, shall have, or be allowed to exercise, or enjoy within this state any greater rights or privileges than those possessed or enjoyed by corporations of the same or similar character created under the law of the state." And by a supplementary statute (§ 6659, Revised Codes, 1921): "All foreign corporations licensed to do business in the state of Montana shall be subject to all the liabilities, restrictions, and duties which are or may be imposed upon corporations of like character organized under the laws of this state, and shall have no other or greater powers." Construing that statute, the Supreme Court of Montana has written in the case now under review: "Suits against domestic corporations do not abate upon the entry of a decree of dissolution, and the same rule, by virtue of this statutory provision, must apply to a foreign corporation."

Long before the dissolution of the Federal Surety Company the respondents Williard and Wheaton, as trustees

of a syndicate, brought suit in a Montana court to recover from the surety company the damages due upon a bond. The first trial resulted in a nonsuit, which was reversed upon appeal. 91 Mont. 465; 8 P. (2d) 633. After the decree of dissolution the case came on for a second trial, and on May 10, 1932, judgment in favor of the plaintiffs was entered by default. The Supreme Court of Montana has held that the dissolution of the surety company did not abate the suit. There was thus a final judgment, valid under the Montana practice and effective according to that practice to liquidate the claim.

To say that there was such a judgment is not to dispose of the whole case. A judgment existing, the remedies available to enforce it are still to be determined. Before the respondents were in a position to issue execution, the situation had been complicated by a suit for the appointment of a receiver begun in a Montana District Court. On March 25, 1932, Mieyr, a simple contract creditor, brought suit against the surety company and Clark, the foreign liquidator, praying an ancillary receivership to preserve the local assets. A temporary receiver (Crichton) was appointed the same day. While that suit was pending, the respondents filed a petition on May 24, 1932, for leave to issue an execution against securities and moneys which had been discovered in Montana, the levy to have the same effect as if no receiver had been appointed. An order to that effect was granted, subject, however, to a later motion to vacate it. Within due time thereafter, Clark filed a cross petition and an answer, asserting his title as successor to the dissolved corporation, opposing the demands of the judgment creditors, and setting up his rights and privileges under Art. IV, § 1, of the Federal Constitution. On August 25, 1932, the District Court of Montana entered a final decree adjudging that Clark was the successor to the personality and title of the Iowa corporation, that the assets should be liqui-

dated and ratably distributed subject only to the liens existing at the date of dissolution, that Crichton should be continued as an ancillary receiver to assist the foreign liquidator, that the assets in Montana should be retained in that state until local creditors had received their ratable proportion of assets there and elsewhere, and that the execution upon the respondents' judgment and any preference thereby created, as well as the earlier order sanctioning the levy, should be set aside and cancelled.

From that decree, and from an order denying a motion to vacate or modify it, the judgment creditors, who are the respondents in this court, appealed to the Supreme Court of Montana. After argument and reargument, the decree and order were there reversed, two members of the court dissenting. *Mieyr* v. *Federal Surety Co.*, 94 Mont. 508; 23 P. (2d) 959. The court held that the respondents' judgment had been lawfully recovered though the defendant was dissolved; that the ancillary receivership was void for the reason that a simple contract creditor (Mieyr) was without standing to maintain the suit; that Clark, the foreign liquidator, was not the successor to the corporate personality with a title derived from the statutes of the domicile, but was a chancery receiver with a title (if any) created by the Iowa decree; that as against such a receiver, creditors in Montana were at liberty to levy attachments and executions, irrespective of their right to enforce such a levy against a statutory successor; and hence that the respondents' execution should be reinstated, and the cause remanded for further proceedings in accord with the opinion. A writ of certiorari brings the case here.

Our jurisdiction to issue the writ is challenged on the ground that the decree to be reviewed is without the requisite finality. Judicial Code, § 237; 28 U.S.C., § 344. The challenge should not prevail. The decree of the Montana court is final to the extent that it confirms the respondents'

execution and permits a levy that will override the liquidator's title. A final order results where a court denies a petition by an intervening creditor to establish a prior lien (*Gumbel* v. *Pitkin,* 113 U.S. 545, 548), or a petition by a municipal corporation intervening in a foreclosure suit to enforce a lien for taxes superior to the mortgage (*Savannah* v. *Jesup,* 106 U.S. 563, 564, 565), or one by a chancery receiver appointed by a state court for the delivery of property in the possession of another court. *Ex parte Tiffany,* 252 U.S. 32, 36. Cf. *Hovey* v. *McDonald,* 109 U.S. 150, 155; *Williams* v. *Morgan,* 111 U.S. 684, 689; *United States* v. *River Rouge Co.,* 269 U.S. 411, 414; *Dexter Horton National Bank* v. *Hawkins,* 190 Fed. 924, 927. The doctrine of those cases is applicable here. Further judicial proceedings may be necessary between the liquidator and others not before us. As between the liquidator and the respondents claiming as judgment creditors the suit is at an end. They came into court *pro interesse suo* with a petition to establish the priority of their judgment. The petition has been granted and priority decreed. Not only that, but an order vacating the execution has been reversed, and the levy reinstated. So far as these respondents are concerned, there is nothing more to be decided. " The property of the Federal Surety Company within the state of Montana at the time of the levy of the execution by Williard et al., not being in possession of the Iowa receiver, was subject to levy, and the levy made under the execution in May, 1932, is good and valid." By that opinion, which by reference was incorporated in the judgment (*Metropolitan Water Co.* v. *Kaw Valley District,* 223 U.S. 519, 523; *Gulf Refining Co.* v. *United States,* 269 U.S. 125, 135), nothing was left to the discretion of the trial court in respect of the priority of the execution or of the respondents' rights thereunder. The intervening petition has been finally disposed of, and no longer is a pending proceeding, whatever may be said

of the suit in which the claimants intervened. Cf. *Forgay* v. *Conrad,* 6 How. 201, 202, 203; *United States* v. *River Rouge Co., supra.*

Jurisdiction being here, the case will be considered on the merits.

We assume in accordance with the decision of the Montana court that the respondents' action against the surety company did not abate on dissolution, but was lawfully pursued to judgment. *McGoon* v. *Scales,* 9 Wall. 23; cf. *Sinnott* v. *Hanan,* 214 N.Y. 454, 458, 459; 108 N.E. 858; *Marstaller* v. *Mills,* 143 N.Y. 398, 400; 38 N.E. 370. Cases such as *Remington & Sons* v. *Samana Bay Co.,* 140 Mass. 494; 5 N.E. 292, and others cited in the margin [1] are not at war with this conclusion. They express the rule to be applied when there is no statute or public policy to the contrary in the state where the foreign corporation has been licensed to do business. They do not delimit the capacity of a state, when granting such a license, to subject it to conditions. Complications might exist if there had been no one within the state upon whom process could be served. Here the action was begun, and the company had appeared and answered, before the date of dissolution. Moreover, a power of attorney was on file, pursuant to the Montana law (Revised Codes, 1921, § 6212), whereby process might be served on the Insurance Commissioner of the state, the power to remain in force so long as any policy or liability of the company was outstanding in Montana. Cf. *American Railway Express Co.* v. *Kentucky,* 273 U.S. 269, 274; *Washington* v. *Superior Court,* 289 U.S. 361, 364, 365. Complications also might exist if there were no one

---

[1] *National Surety Co.* v. *Cobb,* 66 F. (2d) 323; *Marion Phosphate Co.* v. *Perry,* 74 Fed. 425; *Fitts* v. *National Life Assn.,* 130 Ala. 413; 30 So. 374; *Riddell* v. *Rochester German Ins. Co.,* 35 R.I. 45; 85 Atl. 273; *Morgan* v. *New York National Building & Loan Assn.,* 73 Conn. 151; 46 Atl. 877.

in being with authority to continue the defense. Here there had been the designation of a liquidator who was competent to represent the corporation if he had chosen to intervene. Cf. *Oklahoma Natural Gas Co.* v. *Oklahoma,* 273 U.S. 257. We are not to be understood as intimating that such complications would be fatal if they existed, but merely to exclude them. In such circumstances the judgment is at least effectual to liquidate the claim as a charge upon the local assets. But this, as we have seen, is only a partial statement of the problem. To ascertain the procedure by which the charge is to be enforced, whether by the levy of execution or by a ratable division, other considerations must be weighed. In particular it must be known whether superior interests or titles have developed between the summons and the judgment, and whether the quality or operation of those interests affects the method of distribution. Something did intervene here, the appointment of a liquidator under the statutes of the domicile. That much is undisputed. Did the Supreme Court of Montana misjudge the quality and operation of this intervening interest, and in so doing did it deny to the statutes and decrees of Iowa the faith and credit owing to them under the Constitution of the United States?

In our judgment the statutes of Iowa have made the official liquidator the successor to the corporation, and not a mere receiver. *State ex rel. Attorney-General* v. *Fidelity Loan & Trust Co.,* 113 Iowa 439; 85 N.W. 638. His title is not the consequence of a decree of a court whereby a corporation still in being has made a compulsory assignment of its assets with a view to liquidation. *Sterrett* v. *Second National Bank,* 248 U.S. 73; [2] *Lion Bonding Co.* v.

---

[2] The insolvent corporation in *Sterrett* v. *Second National Bank, supra,* was not to be dissolved until there had been a final settlement of the business. Pp. 74, 75.

*Karatz,* 262 U.S. 77, 88; *Great Western Mining Co.* v. *Harris,* 198 U.S. 561, 575; *Booth* v. *Clark,* 17 How. 322. His title is the consequence of a succession established for the corporation by the law of its creation. *Relfe* v. *Rundle, supra; Keatley* v. *Furey, supra; Sterrett* v. *Second National Bank, supra,* p. 77; cf. *Bockover* v. *Life Assn. of America,* 77 Va. 85; *Converse* v. *Hamilton,* 224 U.S. 243, 257; *Bernheimer* v. *Converse,* 206 U.S. 516, 534. So the lawmakers have plainly said. So the Iowa court adjudged in decreeing dissolution.

We think the Supreme Court of Montana denied full faith and credit to the statutes and judicial proceedings of Iowa in holding, as it did, that the petitioner was a receiver deriving title through a judicial proceeding, and not through the charter of its being and the succession there prescribed. "When the transfer of a debtor's property," said the court, "is the result of a judicial proceeding there is no provision of the constitution which requires the courts of another state to carry it into effect and as a general rule no state court will do this to the prejudice of the citizens of its own state," citing *Reynolds* v. *Adden,* 136 U.S. 348, a case of insolvency proceedings *in invitum* against a natural person, and *Zacher* v. *Fidelity Trust Co.,* 106 Fed. 593, an enforced assignment to the receiver of a corporation which retained its corporate life. Bankruptcy or insolvency proceedings, whether the debtor is a natural or a juristic person, confer upon the receiver or assignee a title which, generally speaking, is without recognition outside of the state of his appointment except in subordination to the claims of local creditors. *Security Trust Co.* v. *Dodd, Mead & Co.,* 173 U.S. 624; *Cole* v. *Cunningham,* 133 U.S. 107; *Oakey* v. *Bennett,* 11 How. 33, 44; *Barth* v. *Backus,* 140 N.Y. 230; 35 N.E. 425; *Ward* v. *Connecticut Pipe Mfg. Co.,* 71 Conn. 345; 41 Atl. 1057; *Gilbert* v. *Hewetson,* 79 Minn. 326; 82 N.W.

**655.** Upon the strength of these and like decisions the Montana court has refused recognition to a receiver or liquidator who in truth is a statutory successor. Whether it would have favored that conclusion if it had correctly interpreted his standing, its opinion does not tell us. The case should go back to the end that the priority of the execution may be determined with understanding of the title displaced and overridden.

In thus holding we do not say that there is an invariable rule by which the title of a statutory liquidator must prevail over executions and attachments outside of the state of his appointment. The subject is involved in confusion, with decisions *pro* and *con*. There are cases which lay down the rule that the title of such a liquidator will have recognition and enforcement everywhere without affirming or denying the possibility of exceptions. *Kinsler* v. *Casualty Co.*, 103 Neb. 382; 172 N.W. 33; *U.S. Truck Co.* v. *Pennsylvania Surety Co.*, 259 Mich. 422; 243 N.W. 311; *Bockover* v. *Life Assn., supra; Parsons* v. *Charter Oak Life Ins. Co.*, 31 Fed. 305; *Fry* v. *Charter Oak Life Insurance Co.* 31 Fed. 197; cf. *Taylor* v. *Life Assn. of America*, 13 Fed. 493; *Smith* v. *Taggart*, 87 Fed. 94; *Southern Building & Loan Assn.* v. *Miller*, 118 Fed. 369. Other cases add a *dictum* (*Martyne* v. *American Union Fire Ins. Co., supra*) that the state in which the title is assailed may declare a contrary policy by statute or decision. Cf. *Disconto Gesellschaft* v. *Umbreit*, 208 U.S. 570, 579, 580. Still others take the view that the claims of local creditors are entitled to precedence. *Schloss* v. *Surety Co.*, 149 Ia. 382; 128 N.W. 384; *Lackmann* v. *Supreme Council*, 142 Cal. 22; 75 Pac. 583. The position of a claimant who has the standing of a statutory successor is more closely analogous to that of a trustee under a voluntary general assignment for the benefit of creditors (*Ockerman* v. *Cross*, 54 N.Y. 29; *Warner* v. *Jaffray*, 96 N.Y. 248, 255; *Hervey* v. *R. I. Locomotive Works*, 93 U.S.

664) than to one deriving title under a decree in insolvency proceedings (*Security Trust Co.* v. *Dodd, Mead & Co., supra,* p. 628), yet it is stronger than either in that for many purposes the corporation under which he claims has passed out of existence.

Whether there is in Montana a local policy, expressed in statute or decision, whereby judgments and attachments have a preference over the title of a charter liquidator is a question as to which the Supreme Court of that state will speak with ultimate authority. It has not spoken yet. The tendency in most of the states is to give priority to the title unless a contrary policy is expressed with reasonable clarity. *Martyne* v. *American Union Fire Ins. Co., supra; Kinsler* v. *Casualty Co., supra; Bockover* v. *Life Assn. of America, supra;* cf. *Cogliano* v. *Ferguson,* 245 Mass. 364; 139 N.E. 527. No statute or decision brought to our notice from Montana removes the question from the field of doubt. True there are the statutes heretofore referred to whereby suit may be maintained against foreign corporations after dissolution on the same basis as against domestic ones. Nothing in those provisions declares the existence of a policy to allow the assets of an insolvent corporation to be torn to pieces at the suit of rival creditors when they could be distributed equally and without sacrifice at the hands of a receiver. At all events the policy, if it exists, is indicated too obscurely to permit us to accept it until so instructed by the Montana court. The drastic consequences of acceptance attest the need of caution. Partnerships and individuals, if hard pressed, may resort to a court of bankruptcy and thus conserve their assets. Business corporations may have their assets equally distributed through involuntary proceedings. But insurance corporations, like banks, are excluded from bankruptcy altogether (11 U.S.C. § 22b), and must submit to dismemberment, however great the waste or inequality, unless receivers are

appointed. The respondents would have us say that submission to such consequences is exacted by an unbending rule of law.

We have no thought to impose our reading of the local statutes and decisions upon the courts of the locality. What we are about to say as to their meaning does no more than explain the grounds for our understanding that the courts of Montana have left the question open. If the law were clear beyond debate, as counsel for the respondents has contended that it is, our duty might be to dispose of the entire controversy now instead of remanding it to the state court for further action there. We are mindful of the practice whereby domestic corporations dissolved by the Montana law may be wound up by the directors as trustees in dissolution. Revised Codes, § 6011; formerly Civil Code, § 561. We understand also that while the assets are so held, claims may be reduced to judgment, and attachments and executions levied. This is doubtless the prevailing practice when the corporation is solvent, or when insolvency is not so gross as to lead to sacrifice or hardship. Inability to discharge liabilities as they mature, or even impairment of the capital prescribed by the articles of association, may not mean that the assets will be insufficient when put up at public sale. But administration by the directors, subject to attachment and execution, is not the only form of distribution that is known to the local law. In appropriate cases a dissolved corporation may be wound up by a receiver as an officer of the court. By § 9303 of the Revised Codes of 1921, a creditor of a dissolved corporation (presumably a judgment creditor) may apply for a receiver to liquidate the assets,[3] and after

---

[3] § 9303. "Upon the dissolution of any corporation the district court of the county in which the corporation carries on its business or has its principal place of business, on application of any creditor of the corporation, or of any stockholder or member thereof may appoint one or more persons to be receivers or trustees of the corpo-

such appointment executions are forbidden. *Gardner* v *Caldwell*, 16 Mont. 221; 40 Pac. 590; cf. *Barker* v. *Edwards*, 259 Fed. 484, 488; *Rohr* v. *Stanton Trust & Savings Bank*, 76 Mont. 248, 251, 253; 245 Pac. 947; *Berryman* v. *Billings Mutual Heating Co.*, 44 Mont. 517, 521; 121 Pac. 280. The decisions are obscure as to the circumstances in which that statute will be applied. The vast majority of the Montana cases on the subject of receivers are grounded on another section (9301), under which the tests are very different. There is hardly a word in any of them as to the meaning of § 9303 and the remedy there-

---

ration, to take charge of the estate and effects thereof, and to collect the debts and property due and belonging to the corporation and to pay the outstanding debts thereof, and to divide the moneys and other property that shall remain over among the stockholders or members."

Another section dealing with the appointment of receivers is 9301, subd. 5.

"A receiver may be appointed by the court in which an action is pending, or by the judge thereof: . . .

" In cases when a corporation has been dissolved, or is insolvent, or in imminent danger of insolvency, or has forfeited its corporate rights."

By construction, that section has been limited to receivers appointed *pendente lite*.

" It is a well settled rule of law that there cannot be such a thing as an action brought distinctively and solely for the appointment of a receiver." *State* v. *District Court*, 50 Mont. 259, 263; 146 Pac. 539. A receivership is a provisional remedy. "An action must be pending before a receiver can be appointed." *State* v. *District Court, supra*.

All this according to our understanding has no relation to an application under § 9303, where the appointment of a receiver is the end and aim of the proceeding.

Compare the decisions in California under statutes identical in form: *Henderson* v. *Palmer Union Oil Co.*, 29 Cal. App. 451; 156 Pac. 65; *French Bank Case*, 53 Cal. 495, 553; *Havemeyer* v. *Superior Court*, 84 Cal. 327, 365; 24 Pac. 121; *State I. & I. Co.* v. *San Francisco*, 101 Cal. 135, 147, 148; 35 Pac. 549; *Elliott* v. *Superior Court*, 168 Cal. 727; 145 Pac. 101.

under. Thus, in *Forsell* v. *Pittsburgh & Montana Copper Co.*, 42 Mont. 412; 113 Pac. 479, a creditor obtained a judgment against a foreign corporation, not dissolved, and execution was issued and returned unsatisfied. The creditor then applied for a receiver, but without alleging that there was any property within the state. The court held that no case was made out by the allegations of the bill. In *Berryman* v. *Billings Heating Co.*, 44 Mont. 517, 525; 121 Pac. 280, a temporary receiver was appointed in an action against a domestic corporation not dissolved. In aid of this appointment the plaintiff, a simple contract creditor, alleged that the defendant was insolvent. On appeal the court held that this without more did not make the appointment necessary, and vacated the receivership. In *Prudential Securities Co.* v. *Three Forks H. & M. V. Ry. Co.*, 49 Mont. 567, 572; 144 Pac. 158, and again in *Scholefield* v. *Merrill Mortuaries, Inc.*, 93 Mont. 192; 17 P. (2d) 1081, the situation was the same as in the suit by *Berryman, supra*, the applicants for the receiver being simple contract creditors suing to collect a debt. What was said as to the trust fund doctrine when invoked by a creditor so situated (49 Mont. at p. 572) is in full accord with the doctrine prevailing in this court. *Hollins* v. *Brierfield Coal & Iron Co.*, 150 U.S. 371. The case at hand is barely grazed by *Ferrell* v. *Evans*, 25 Mont. 444, 454; 65 Pac. 714. There the suit was for the appointment of a receiver to wind up a building and loan company whose charter had expired. The court held that there was no need of superseding the directors who were statutory trustees under § 6011 of the Revised Codes. The opinion states: "No exception is made in case of insolvency," but this is supplemented by the statement that in fact "the association was not insolvent." The *dictum* quoted does not amount to a decision that a receiver will never be appointed under § 9303 in a case where a corporation has been dissolved and multiplying executions threaten a dispersion of the assets. No such question was involved.

The situation was much the same in *Merges* v. *Altenbrand,* 45 Mont. 355; 123 Pac. 21. The charter of a solvent corporation had expired, and there was no sufficient ground for superseding the directors through the appointment of receivers.[4]

We do not read these decisions as holding in any clear or final way that the directors of a dissolved corporation will never be required to give place to a receiver, no matter how great the danger of inequality or waste. Indeed, it is uncertain whether such a holding would be possible without denying any function to § 9303 of the Montana Code. Inequality and waste are to be avoided in special measure when banks or insurance companies, unable, as we have seen, to have the protection of courts of bankruptcy, are in course of liquidation. The Supreme Court of Montana has been mindful of this need, at all events in respect of banks, and has stated it with force and clarity. Thus, in *Rohr* v. *Stanton Trust & Savings Bank, supra,* a creditor brought suit in the hope of gaining a preference for his deposit out of the assets of a bank in the hands of a receiver. The court said (p. 251), " the general principle of equity that the assets of an insolvent are to be distributed ratably among general creditors applies with full force to the distribution of the assets of a bank," and again (p. 253), " The available assets " are to be " so

---

[4] *Gilna* v. *Barker,* 78 Mont. 357; 254 Pac. 174, it would seem, is even farther from the case at hand. A creditor brought suit against a domestic corporation for the liquidation of a debt. The trial court dismissed the complaint on the ground that suit was unnecessary after the corporation had been dissolved. That judgment was reversed. The court did not hold that there would be no occasion for a receivership thereafter. It left that question open. " Counsel for defendants argue that plaintiff should have intervened in the case in which the court decreed a sale of the property of the defunct corporation and should have asked for a receiver. He may have been entitled to that privilege, but, if so, it did not deprive him of the right to institute the instant case, reduce his claim to judgment and take the chance of realizing on it." P. 367.

128

conserved that each depositor or other creditor shall receive payment or dividend according to the amount of his debt, and that none of equal class shall receive any advantage or preference over another." Cf. *Aetna Accident & Liability Co.* v. *Miller*, 54 Mont. 377, 389; 170 Pac. 760. It would seem that conservation of assets and equality of distribution are goods no less important in the winding up of insurance companies and of other moneyed corporations than in the winding up of banks.

From this survey of the decisions in Montana there results this truth, if nothing more, that there has been no definitive pronouncement as to the circumstances justifying a receivership for an insolvent corporation, and that the question is left open whether receivers of such a corporation will be appointed after dissolution to prevent waste or inequality. If that is so, it results also that the question is still open whether executions may be subordinated to the title of a foreign liquidator without a forbidden discrimination between corporations organized in Montana and those from other states. A statute preserving remedies after a decree of dissolution does not mean that for every purpose a corporation, though dissolved, is still a juristic person, or that equity is indifferent as to the mode of marshalling the assets. All that it means is that suits shall not abate, but may be prosecuted to judgment as if the corporation were in being. What will be done afterwards in the enforcement of a judgment will vary with the circumstances. When a charter liquidator whose standing is recognized in Montana, is decreed to have an interest superior to the lien of later executions, as if his position were that of a receiver appointed by the local courts, there is no resulting inequality between foreign and domestic corporations, no favoring of the one class in hostility to the other. So, at least, the Montana court may not unreasonably decide. By hypothesis the domestic corporation after dissolution may be placed,

upon a proper showing, in the hands of a receiver, and its assets ratably distributed. The foreign corporation, represented by a foreign liquidator, may be subjected to the same restraints. If supplementary directions are thought to be appropriate to the end that local assets may be kept within Montana till local creditors are paid their share of all the assets everywhere, there is power in a court of equity to assure the requisite equality. *Sands* v. *E. S. Greeley Co.*, 88 Fed. 130; *Receivers Middlesex Banking Co.* v. *Realty Investment Co.*, 104 Conn. 206; 132 Atl. 390; *Buswell* v. *Supreme Sitting of Order of Iron Hall*, 161 Mass. 224; 36 N.E. 1065; *Fawcett* v. *Supreme Sitting of Order of Iron Hall*, 64 Conn. 170; 29 Atl. 614; *People* v. *Granite State Provident Assn.*, 161 N.Y. 492; 55 N.E. 1053.

To resume: The Supreme Court of Montana will determine whether there is any local policy whereby an insolvent foreign corporation in the hands of a liquidator with title must submit to the sacrifice of its assets or to their unequal distribution by writs of execution.

If such a policy exists and the foreign liquidator is thus displaced, other questions may remain as to the power of the state which there is no occasion to consider in advance of the event.

The decree should be vacated in so far as it adjudges the validity and priority of the respondents' execution (cf. *Dorchy* v. *Kansas*, 264 U.S. 286, 291; *Missouri* v. *Public Service Comm'n*, 273 U.S. 126, 131), and the cause remanded to the Supreme Court of Montana for further proceedings not inconsistent with this opinion.

*Reversed.*

Separate opinion by MR. JUSTICE MCREYNOLDS.

This cause has been much obscured by verbiage. The practical problems incident to administering the affairs of insolvent insurance companies are often complex; but

the issues presently presented for determination are narrow and ought to cabin our discussion.

In 1931 an Iowa court, proceeding under local statutes, adjudged that the corporate existence of the Federal Surety Company organized in that State had terminated; that E. W. Clark, receiver and liquidating officer, is its successor and holds title to all corporate property for the purposes of liquidation, etc.

January 31, 1928, the Surety Company being then authorized to transact business in Montana, respondents here—Williard, Wheaton and Hay—duly asked for judgment against it in the District Court of Fergus County. May 20, 1932, judgment went in their favor. Clark, the Iowa receiver, did not enter his appearance in the cause, made no effort to prevent the judgment. Execution issued and was levied, May —, 1932, upon property of the Company found in Montana.

In March, 1932, one John Mieyr brought suit against the Federal Surety Company in the District Court, Cascade County, Montana. He alleged indebtedness to himself upon an unliquidated claim, also indebtedness to other citizens of Montana for considerable sums, and that the company had much property within the State. He described the Iowa court proceedings wherein the Corporation was declared dissolved and Clark designated as Receiver and averred that Clark was then attempting to obtain possession of the Company's property within Montana with intent to remove it. He asked for judgment for the amount of his claim; and that a local receiver be appointed to take possession of the company's assets in Montana and hold them subject to further order, &c. Thereupon, the court appointed D. A. Crichton receiver of the Montana assets, with powers as prayed: he duly qualified. Clark appeared specially and asked that Crichton's appointment be annulled because the court lacked jurisdiction. This motion was denied May 24th.

On the same day Williard, Wheaton and Hay appearing by petition asked and received approval of their action in procuring levy of the Fergus County execution upon the corporation's property.

July 25, 1932, Receiver Crichton moved to annul the order of May 24, 1932, which approved the levy of the Fergus County execution.

August 3, 1932, Clark appeared and answered Mieyr's complaint. He set out proceedings in the Iowa court and his designation as receiver; he asked an order confirming his title to the Company's assets, also for confirmation of Crichton's appointment as ancillary receiver.

August 25th the court authorized an order reciting that the corporate existence of the Surety Company was terminated by the Iowa proceedings and that title to all of its property passed to Clark as receiver. This order also confirmed the appointment of Crichton as receiver of Montana assets; directed all creditors in that State to file their claims, and that corporate assets should be delivered to him. And further that the order of May 24th permitting the Fergus County execution be set aside.

August 31, 1932, Williard, Wheaton and Hay asked the Cascade County District Court to vacate the order of August 25th upon the ground that the facts disclosed were not sufficient to justify appointment of the receiver; also because the court acted without jurisdiction. In the alternative, they asked that the order be so modified as to release all property seized under any Montana execution or attachment. This motion was denied the same day.

On September 18, 1932, Williard, Wheaton and Hay appealed from the judgment and order of August 25th confirming Crichton's appointment as receiver, &c. and revoking the May 24th order which granted permission for levy of the Fergus County execution. Also, from the order of August 31st which denied their motion to vacate the one entered August 25th. The issues were thus lim-

ited. The opinion of the Supreme Court came down April 1, 1933. It said—

" The appeal presents the question whether appellants have the right to be paid the amount of their claim from the Montana property before any part of such property is transmitted to the Iowa receiver for administration through the Iowa receivership, when, as shown, their claim has been reduced to judgment and execution levied after the proceedings in the Iowa court designed to accomplish the dissolution of the corporation. Solution of the problem presented makes it necessary to determine the effect of the proceedings in the Iowa court upon the corporate life of the surety company." [94 Mont. 508, 518; 23 P. (2d) 959, 961.]

Upon review of the Montana statutes, the Court declared that the suit against the Surety Company in Fergus County did not abate upon entry of the Iowa decree and that the judgment of May 20th therein was valid. It then came to consider whether levy under the Fergus County execution was good and said this " depends upon the effect of the order appointing Crichton receiver." It ultimately and definitely declared: " The petition of Mieyr for the appointment of a receiver was insufficient, in that he, being a general creditor, had no right to the appointment of a receiver and had an adequate remedy by which he could be fully protected, namely, the issuance and levy of a writ of attachment. The property of the Federal Surety Company within the state of Montana at the time of the levy of the execution by Williard, et al., not being in possession of the Iowa receiver, was subject to levy, and the levy made under the execution in May, 1932, is good and valid. The judgment and orders appealed from are reversed and the cause remanded for further proceedings in the district court in accordance with the views herein expressed."

The opinion definitely approved the claim of the appellants that the District Court of Cascade County was acting without authority and beyond its jurisdiction.

Upon the sole petition of Clark, Receiver, a writ of certiorari issued from this Court. We have no jurisdiction unless the judgment of the state court was final; and only federal questions are open for our consideration.

The formal judgment of the Supreme Court directed— " For reasons stated in the opinion the judgment and orders appealed from are reversed and the cause remanded for further proceedings in accordance with the views expressed in the opinion." Upon its face this is not final within the meaning of the statute governing our jurisdiction. And " in matters of this kind we may not disregard the face of the record and treat the judgment as something other than it appears to be. So to do probably would lead to much confusion and uncertainty." *Hartford Accident & Ind. Co.* v. *Bunn,* 285 U.S. 169, 178. *McComb* v. *Commissioners,* 91 U.S. 1; *Bostwick* v. *Brinkerhoff,* 106 U.S. 3, 4; *Haseltine* v. *Central Bank,* 183 U.S. 130; *Schlosser* v. *Hemphill,* 198 U.S. 173, 175; *Norfolk Turnpike Co.* v. *Virginia,* 225 U.S. 264, 268; *Louisiana Navigation Co.* v. *Oyster Comm'n,* 226 U.S. 99, 101; *Georgia Ry. Co.* v. *Decatur,* 262 U.S. 432, 437; *Gulf Refining Co.* v. *United States,* 269 U.S. 125, 135, 136.

*Bostwick* v. *Brinkerhoff.* " The rule is well settled and of long standing that a judgment or decree to be final, within the meaning of that term as used in the acts of Congress giving this court jurisdiction on appeals and writs of error, must terminate the litigation between the parties on the merits of the case, so that if there should be an affirmance here, the court below would have nothing to do but to execute the judgment or decree it had already rendered. . . . If the judgment is not one which disposes of the whole case on its merits, it is not final. Con-

sequently it has been uniformly held that a judgment of reversal with leave for further proceedings in the court below cannot be brought here on writ of error."

*Haseltine* v. *Central Bank.* "We have frequently held that a judgment reversing that of the court below, and remanding the case for further proceedings, is not one to which a writ of error will lie. . . . While the judgment may dispose of the case as presented, it is impossible to anticipate its ultimate disposition. It may be voluntarily discontinued, or it may happen that the defeated party may amend his pleading by supplying some discovered defect, and go to trial upon new evidence. To determine whether, in a particular case, this may or may not be done, might involve an examination, not only of the record, but even of the evidence in the court of original jurisdiction, and lead to inquiries with regard to the actual final disposition of the case by the Supreme Court, which it might be difficult to answer. We have, therefore, always made the face of the judgment the test of its finality, and refused to inquire whether, in case of a new trial, the defeated party would stand in a position to make a better case. The plaintiffs in the case under consideration could have secured an immediate review by this court, if the court as a part of its judgment of reversal had ordered the Circuit Court to dismiss their petition, when, under *Mower* v. *Fletcher* [114 U.S. 127] they might have sued out a writ of error at once."

*Schlosser* v. *Hemphill*—an action in equity to quiet title. "By its judgment the Supreme Court of Iowa reversed the decree of the trial court and remanded the cause ' for further proceedings in harmony with the opinion of the court.' We have heretofore held that a judgment couched in such terms is not final in such a sense as to sustain a writ of error from this court. . . . Doubtless the conclusions arrived at by the state Supreme Court,

and expressed in its opinion, furnish the grounds on which the court below must proceed, when the case goes to a decree there, if no change in pleadings or proof takes place, but we cannot say what action might nevertheless be taken, and as no decree was entered in the Supreme Court, and no specific instruction was given to the court below, we think the writ of error cannot be maintained. Assuming, without deciding, that a Federal question was so raised as otherwise to have justified the exercise of our jurisdiction, we can but repeat what we said in *Haseltine's* case: ' The plaintiffs in the case under consideration could have secured an immediate review by this court, if the court as a part of its judgment of reversal had ordered the Circuit Court to dismiss their petition, when, under *Mower* v. *Fletcher*, they might have sued out a writ of error at once.' "

*Louisiana Navigation Co.* v. *Oyster Comm'n.* Writ of error to Louisiana Supreme Court dismissed, judgment not final. " The contention, however, is that the judgment below is final for the purpose of review by this court, because when the opinion of the Supreme Court of Louisiana is carefully weighed it will be found that that court practically finally disposed adversely to the title of the plaintiff of the substantial part of the lands involved in the suit and hence that the court in remanding the cause for further proceedings did so only as to other lands. But conceding this to be true, it does not justify the claim based on it. In the first place it is settled that this court may not be called upon to review by piecemeal the action of a state court which otherwise would be within its jurisdiction, and in the second place the rule established by the authorities to which we have referred is that on the question of finality the form of the judgment is controlling, and hence that this court cannot for the purpose of determining whether its reviewing

power exists be called upon to disregard the form of the judgment in order to ascertain whether a judgment which is in form not final might by applying the state law be treated as final in character. Indeed it has been pointed out that the confusion and contradiction which inevitably arose from resorting to the state law for the purpose of converting a judgment not on its face final into one final in character was the dominating reason leading to the establishment of the principle that the form of the judgment was controlling for the purpose of ascertaining its finality."

*Georgia Ry. Co.* v. *Decatur*—error to Georgia Supreme Court, in proceeding for injunction. " The rule is established that in order to give this Court appellate jurisdiction the judgment or decree ' must terminate the litigation between the parties on the merits of the case, so that if there should be an affirmance here, the court below would have nothing to do but to execute the judgment or decree it had already rendered.' "

*Gulf Refining Co.* v. *United States*—appeal from Circuit Court of Appeals. The challenged judgment was held final. " The general rule established by many decisions, of which *Haseltine* v. *Central Bank of Springfield* (No. 1), 183 U.S. 130, is an example, is that the face of the judgment is the test of its finality and that by this test a judgment of reversal remanding the cause for further proceedings in conformity with the opinion of the court ordinarily is not final. But the direction to proceed consistently with the opinion of the court has the effect of making the opinion a part of the mandate, as though it had been therein set out at length. *Metropolitan Co.* v. *Kaw Valley District,* 223 U.S. 519, 523. Under the stipulations above recited, the trial court was bound to enter decrees for the government for the stated sums of money if that court found that the government was entitled to

recover the net value of the oil produced. The trial court found that the government was not so entitled and the decrees went accordingly. Turning to the opinion, it will be seen that the circuit court of appeals decided that the trial court erred 'in entering the decrees denying the complainant the right to recover the net value of the oil, etc.' The instruction for further proceedings not inconsistent with the opinion, therefore, was equivalent to a direction to render judgment for the net value—that is, for the exact sums set forth in the stipulations. See *Moody* v. *Century Bank*, 239 U.S. 374, 376; *Chesapeake & Potomac Tel. Co.* v. *Manning*, 186 U.S. 238, 241. There was no evidence to be taken or considered, and no change in the issue was possible; nothing remained but the ministerial duty of entering a decree for the precise sums which had been fixed beyond the power of alteration. It follows that the jurisdictional objection is without merit."

The judgment of the Supreme Court now before us is not final in form and I think inspection of the opinion does not definitely indicate the action which the District Court of Cascade County would have been bound to take. In his original petition against the Surety Company as sole defendant Mieyr prayed for judgment upon his claim, for appointment of a local receiver to take charge of Company assets, etc. And during the progress of the cause sundry questions were interposed by interveners. Others may appear and amendments may be offered. We have no jurisdiction.

If, however, the judgment below be treated as final, then we must ascertain, if possible, what was actually determined. Our function is to review adjudications, not mere expressions of opinion or unnecessary statements.

Apparently, the Supreme Court definitely adjudged that the trial court lacked power to appoint a receiver for the corporate assets within the State at the instance

of Mieyr, a mere general creditor. Consequently the particular orders complained of by Williard and others were invalid as they had claimed. Determination of that question of state law gave adequate basis for disposition of the cause. It is enough to support the judgment and is not reviewable here. Discussion of federal questions was unnecessary and views of the court in respect of them are not presently important.

In any event, it seems reasonably clear that the only federal question before the Supreme Court of Montana which may be open for our consideration concerns the effect of the Iowa statutes and court decree under which Clark became Receiver. It accepted the view that his appointment or designation did not operate to vest him with adequate title to the property of the defunct Company wherever situated, that " such [an] involuntary assignment in aid of a statutory judicial proceeding will not be recognized outside of the jurisdiction of the appointment, where the rights of domestic creditors are involved, if the receiver has not obtained possession of the property and where the creditors have obtained rights or liens upon the property even after the appointment in the foreign jurisdiction." Probably this conclusion was erroneous. It involved a federal question. At the most we should announce the correct rule with the reasons therefor and send the cause back to the Supreme Court of Montana for further proceedings not in conflict with our determination. But this Court is neither called upon nor can it, without impropriety, discuss mere questions of state law which may hereafter be presented for decision by the courts of Montana. It is not our function to suggest to state courts how they should interpret their own laws. Theirs is the duty of deciding such matters; ours requires forbearance from tendering advice in that regard.

The writ of certiorari should be dismissed.